## STATE OF CONNECTICUT *v.* ANONYMOUS (1976–3)*

### SUPERIOR COURT

BERDON, J. The defendant is charged with possession of "a cannabis-type substance,[1] to wit:

---

* Thus entitled, in view of General Statutes § 54-90.

[1] The legislation does not distinguish between marihuana and any other form of the drug obtained from the hemp plant, cannabis sativa. General Statutes § 19-443 (7) defines cannabis-type drugs

marihuana, with intent to sell[2] or dispense, in violation of" General Statutes § 19-480 (b).[3] Before the

to include "all parts of any plant, or species of the genus cannabis or any infra specific taxon thereof whether growing or not; the seeds thereof; the resin extracted from any part of such a plant; and every compound, manufacture, salt, derivative, mixture or preparation of such plant, its seeds or resin; but shall not include the mature stalks of such plant, fiber produced from such stalks, oil or cake made from the seeds of such plant, any other compound, manufacture, salt, derivative, mixture or preparation of such mature stalks, except the resin extracted therefrom, fiber, oil or cake, or the sterilized seed of such plant which is incapable of germination. Included are cannabinon, cannabinol, cannabidiol and chemical compounds which are similar to cannabinon, cannabinol or cannabidiol in chemical structure or which are similar thereto in physiological effect, and which show a like potential for abuse, which are controlled substances under this chapter unless modified; . . . ." Section 19-443 (29) defines marihuana in substantially the same language.

[2] A "sale" under the statute does not require that the transfer be for profit or for any remuneration. It is defined by § 19-443 (50) as "any form of delivery which includes barter, exchange or gift, or offer therefor, and each such transaction made by any person whether as principal, proprietor, agent, servant or employee." See *State* v. *Brown,* 163 Conn. 52, 62. Possession of marihuana with intent to dispense or sell can therefore mean possession with intent to make an "accommodation sale" or even possession with intent to give it for no consideration to another person.

[3] All references to § 19-480 refer to the statute as amended by Public Act No. 74-332 § 2: "(a) Any person who manufactures, distributes, sells, prescribes, dispenses, compounds, transports with the intent to sell or dispense, possesses with the intent to sell or dispense, offers, gives or administers to another person any controlled substance which is a hallucinogenic substance other than marihuana or a narcotic substance except as authorized in this chapter, for a first offense, shall be imprisoned not more than fifteen years and may be fined not more than three thousand dollars or be both fined and imprisoned and for each subsequent offense, shall be imprisoned not more than thirty years and may be fined not more than five thousand dollars, or be both fined and imprisoned. (b) Any person who manufactures, distributes, sells, prescribes, dispenses, compounds, transports with intent to sell or dispense, possesses with intent to sell or dispense, offers, gives or administers to another person any controlled substance other than a hallucinogenic substance other than marihuana, or a narcotic substance except as authorized in this chapter, may, for the first offense, be fined not more than one thousand dollars or be imprisoned not more than seven years or be both fined and imprisoned; and, for each subsequent offense, may be fined not more than five thousand dollars or be imprisoned not more than fifteen years, or be both fined and imprisoned. . . ."

court is the defendant's motion to quash,[4] in which inter alia[5] he claims that the statute is unconstitutional as it pertains to possession with intent to sell or dispense marihuana because it arbitrarily and irrationally classifies marihuana with far more dangerous drugs. It is his claim that such classification is in violation of the equal protection clauses of the fourteenth amendment to the federal constitution and article first, § 20, of the Connecticut constitution.[6]

The defendant, charged with violation of § 19-480 (b), in part bases his constitutional claims on the assumption that violations concerning narcotic substances (morphine- and cocaine-type drugs)[7] fall within this paragraph for penalty purposes. Although the wording of this statute leaves much to be desired, there can be no question that the legislature intended to classify narcotic substances under paragraph (a), which calls for a much more severe penalty.[8] Paragraph (a) prohibits acts pertaining to narcotic substances and hallucinogenic substances other than marihuana, and para-

---

[4] The motion is entitled "Motion to Quash and/or Dismiss and/or Erase." A motion to quash is the proper pleading when it is alleged that the statute is unconstitutional. Practice Book § 477B. Accordingly, the court will treat this motion as a motion to quash.

[5] The defendant also argues that the statute is unconstitutional to the extent it pertains to marihuana because the penalty imposed constitutes cruel and unusual punishment, it fringes on his right to privacy, it constitutes an improper, irrational and invalid exercise of the police power, and it is vague. The court finds it unnecessary to go into these claims to decide the motion before it.

[6] "The Connecticut constitutional provision has 'a like meaning to that in the fourteenth amendment to the constitution of the United States which prohibits the states from denying to any person the equal protection of the laws.' Lyman v. Adorno, 133 Conn. 511, 515." Kellems v. Brown, 163 Conn. 478, 485.

[7] See General Statutes § 19-443 (30).

[8] In an obvious attempt to correct the ambiguity of the statute, the legislature enacted Public Act No. 75-567 § 65.

graph (b) applies to all other controlled substances, including marihuana, barbiturate-type drugs[9] and amphetamine-type substances.[10] The court must therefore determine whether this classification of marihuana, amphetamines and barbiturates for penalty purposes is a violation of the equal protection clauses of the federal and state constitutions.

"Equal protection analysis must commence with a determination of whether a legislative classification . . . impinges upon a fundamental right. Where the legislation impinges upon a fundamental right . . . it must be struck down unless justified by a compelling state interest. *Dunn* v. *Blumstein,* 405 U.S. 330, 335, 342 . . . . Where the statute does not involve fundamental rights . . . the legislation will withstand constitutional attack if the distinction is founded on a rational basis. *McGinnis* v. *Royster,* 410 U.S. 263, 270 . . . ; *Dandridge* v. *Williams,* 397 U.S. 471, 484, 485 . . . ; *F. S. Royster Guano Co.* v. *Virginia,* 253 U.S. 412, 415 . . . ; *In re Application of Griffiths,* 162 Conn. 249, 258 . . . , rev'd, 413 U.S. 717 . . . ; see *Douglas* v. *California,* 372 U.S. 353, 358 . . . ." *Laden* v. *Warden,* 169 Conn. 540, 542; *Liistro* v. *Robinson,* 170 Conn. 116, 124. Possession of marihuana is not a fundamental right guaranteed by the constitution.

---

[9] General Statutes § 19-443 (5) defines barbiturate-type drugs to include "barbituric acid and its salts, derivatives thereof and chemical compounds which are similar thereto in chemical structure or which are similar thereto in physiological effect, and which show a like potential for abuse, which are controlled substances under this chapter unless modified."

[10] General Statutes § 19-443 (4) defines amphetamine-type substances to include "amphetamine, optical isomers thereof, salts of amphetamine and its isomers, and chemical compounds which are similar thereto in chemical structure or which are similar thereto in physiological effect, and which show a like potential for abuse, which are controlled substances under this chapter unless modified."

Therefore, in determining whether the classification is constitutional, the court will apply the "rational relationship" test.[11]

That test requires that the statutory classification "be based upon some real and substantial distinction, bearing a reasonable and just relation to the things in respect to which such classification is imposed; and classification cannot be arbitrarily made without any substantial basis." *Southern Ry. Co.* v. *Greene,* 216 U.S. 400, 417; *Atchison, T. & S.F. Ry. Co.* v. *Vosburg,* 238 U.S. 56, 59 . . . ; *State* v. *Hurliman,* 143 Conn. 502, 506. (But see footnote 59 infra). And it is clear that if the statute includes within the class an object whose inclusion is irrational or arbitrary, such inclusion is in violation of the equal protection clause. "[W]e recognize that the constitutionality of a statute, valid on its face, may be assailed by proof of facts tending to show that the statute as applied to a particular article is without support in reason because the article, although within the prohibited class, is so different from others of the class as to be without the reason for the prohibition." *United States* v. *Carolene Products Co.,* 304 U.S. 144, 153. But, in "adjusting legislation to the need of the people of a State, the legislature has a wide discretion and it may be fully conceded that perfect uniformity of treatment . . . is neither practical nor desirable, that classification . . . is constantly necessary and that questions of proper classification are not free from difficulty." *Truax* v. *Corrigan,* 257 U.S. 312, 337. "Primarily the question of classification is one for the legislature, and the courts will not interfere unless it is clearly unreasonable." *State* v. *Zazzaro,* 128 Conn. 160, 166.

---

[11] Soler, "Of Cannabis and the Courts: A Critical Examination of Constitutional Challenges to Statutory Marijuana Prohibitions," 6 Conn. L. Rev. 601, 606.

It then remains to be seen whether the statute in question meets this rational relationship test. It must be borne in mind that when challenging the constitutionality of a statute the defendant has a heavy burden of proof.[12] *Kellems* v. *Brown,* 163 Conn. 478, 486. "Because of the separation of powers, one claiming that a legislative enactment is invalid on the ground that it is unconstitutional must establish its invalidity on that ground beyond a reasonable doubt." *Adams* v. *Rubinow,* 157 Conn. 150, 152; *Kellems* v. *Brown,* supra. "It is our duty to approach the question with great caution, examine it with infinite care, make every presumption and intendment in its favor, and sustain the Act unless its invalidity is, in our judgment, beyond reasonable doubt." *Beach* v. *Bradstreet,* 85 Conn. 344, 349. Within this context, we must review the statutory classification of marihuana.

It is obvious that the purpose of the legislation is not only to protect the health of those who may be tempted to use marihuana but, in the exercise of the state's police power, to protect society from the effects of a drug which the legislature concluded to be appropriately classified for penalty purposes with amphetamines and barbiturates. This court is therefore required to look at the effect of marihuana on both the user's[13] health and the public welfare, and to compare this to the effect of amphetamines and barbiturates.

The court is not required to restrict itself to the facts or data that were present before the legisla-

---

[12] Some courts have taken this burden of proof and shackled it with almost an ironclad irrebuttable presumption of constitutionality because of the political issue. See *United States* v. *Kiffer,* 477 F.2d 349, 352 (2d Cir.).

[13] But see the concurring opinion in *People* v. *Sinclair,* 387 Mich. 91, 131.

ture when the legislation prohibiting the conduct was adopted. "[A] police regulation, although valid when made, may become, by reason of later events, arbitrary and confiscatory in operation." *Abie State Bank* v. *Bryan,* 282 U.S. 765, 772; *Leary* v. *United States,* 395 U.S. 6, 38. "[A] Court is not at liberty to shut its eyes to an obvious mistake, when the validity of the law depends upon the truth of what is declared. . . . A law depending upon the existence of . . . certain facts to uphold it may cease to operate if . . . the facts change even though valid when passed." *Chastleton Corporation* v. *Sinclair,* 264 U.S. 543, 547. So, even if there were no empirical data available to the legislature at the time, or the legislature had erroneous information regarding the effects of marihuana, this court is not bound to review the constitutionality of the statute based on these misconceptions. The question before this court is whether the present state of knowledge of the effects of marihuana provides a rational basis within the standards previously set forth to classify it with amphetamines and barbiturates for penalty purposes.[14]

The defendant, pursuant to a stipulation entered into with the state, introduced in evidence transcripts of the testimony of expert witnesses for the defendant in the case of *United States* v. *Maiden,* 355 F. Sup. 743 (D. Conn.). The state offered no evidence. This testimony was given by Lester Grinspoon, professor of psychiatry at Harvard Medical School, Joel Fort of the University of California and a former consultant to the United Nations World Health Organization, and Edward Brecher, a scientific research writer. The court is satisfied

[14] "We proceed not to determine scientific questions, but to judge whether the data presently available provides a reasonable basis for the described classification of marijuana." *People* v. *McCabe,* 49 Ill. 2d 338, 342.

that the evidence constituted a sufficient record on which it could determine the issues raised in this case.

The facts relied on by the court in its decision are based on the testimony contained in the transcripts. The court has also made references to corroborating empirical data and other studies which include the first report of the National Commission on Marihuana and Drug Abuse, entitled "Marihuana: A Signal of Misunderstanding" (1972), cited as "Signal of Misunderstanding," and its second report, entitled "Drug Use in America: Problems in Perspective" (1973), cited as "Drug Use in America." This commission was authorized by Congress in the Comprehensive Drug Abuse Prevention and Control Act of 1970, and it was directed to study and report on marihuana.[15] The significant findings of the commission were confirmed by the Canadian Commission of Inquiry into the Non-Medical Use of Drugs, Cannabis (1972).

Marihuana comes from the hemp plant, cannabis sativa. It is a psychoactive drug[16] and its strength

[15] "The Commission shall conduct a study of marihuana including, but not limited to, the following areas: (A) the extent of use of marihuana in the United States to include its various sources, the number of users, number of arrests, number of convictions, amount of marihuana seized, type of user, nature of use; (B) an evaluation of the efficacy of existing marihuana laws; (C) a study of the pharmacology of marihuana and its immediate and long-term effects, both physiological and psychological; (D) the relationship of marihuana use to aggressive behavior and crime; (E) the relationship between marihuana and the use of other drugs; and (F) the international control of marihuana." Public Law 91-513, pt. F, 91st Congress, H.R. 18583 (October 27, 1970).

[16] "A psychoactive drug is any substance capable of modifying mental performance and individual behavior by inducing functional or pathological changes in the central nervous system." National Commission on Marihuana and Drug Abuse, "Marihuana: A Signal of Misunderstanding," p. 49 (1972) (hereinafter cited as "Signal of Misunderstanding"). Included in this classification are "tranquilizers, stimulants, coffee, cigarettes, alcohol, marihuana and other licit or illicit drugs." Id., p. 50.

varies greatly depending on the amount of isomers of tetrahydrocannabiniol, or THC, from the plant's resin, it contains. Marihuana, which is generally used in this country, has the least potency; the strongest is hashish.[17] Although hashish is many times stronger in effect than marihuana, Connecticut statutes make no distinction between these drugs.[18]

The evidence introduced before this court is that there are no significant short-term physiological effects from the use of marihuana.[19] It has been described by Grinspoon as "a remarkable drug for the paucity of physiological effects." The minimal short-term physical effects are limited to the reddening of the whites of the eyes, a slight lowering of blood pressure and an increase in the pulse rate.[20]

---

[17] "Drug preparations from the hemp plant vary widely in quality and potency, depending on the climate, soil, cultivation and method of preparation. The drug is obtained almost exclusively from the female plant. When the cultivated plant is fully ripe, a sticky, golden yellow resin with a minty fragrance covers its flower clusters and top leaves. The plant's resin contains the active substances. Preparations of the drug come in three grades, identified by Indian names. The cheapest and least potent, called bhang, is derived from the cut tops of uncultivated plants and has a low resin content. Most of the marihuana smoked in the U.S. is of this grade. To the discriminating Hindu bhang is a crude substitute for ganja, a little like the difference between beer and fine Scotch, and it is scorned by all but the very poorest in India. Ganja is obtained from the flowering tops and leaves of carefully selected, cultivated plants, and it has a higher quality and quantity of resin. The third and highest grade of the drug, called charas in India, is made from the resin itself, carefully scraped from the tops of mature plants. Only this version of the drug is properly called hashish; the common supposition that hashish refers to all varieties of cannabis drugs is incorrect. Charas, or hashish, is five to eight times stronger in effect than the most potent marihuana regularly available in the U. S." Grinspoon, "Marihuana," 221 Sci. Am. 17 (1969); Signal of Misunderstanding, supra, note 16, p. 50.

[18] See note 1 supra.

[19] Signal of Misunderstanding, supra, note 16, p. 57.

[20] This increase in pulse rate was described by Grinspoon as being "less than that which is produced when you play a set of tennis and the effect is one which as the high wears off, so does the increase in pulse."

The short-term psychological effects[21] are characterized by a euphoria of good feeling,[22] increase of the sense of perception, enhanced appetite and some effect on the short-term memory during the course of the euphoric feeling.[23] For a small number of users, it may cause unpleasant feelings of anxiety and accentuate preexisting neuroses. There are no known long-term or permanent physiological or psychological effects from the use of marihuana.[24]

---

[21] "At low, usual 'social' doses, the intoxicated individual may experience an increased sense of well-being; initial restlessness and hilarity followed by a dreamy, carefree state of relaxation; alteration of sensory perceptions including expansion of space and time; and a more vivid sense of touch, sight, smell, taste, and sound; a feeling of hunger, especially a craving for sweets; and subtle changes in thought formation and expression. To an unknowing observer an individual in this state of consciousness would not appear noticeably different from his normal state." Signal of Misunderstanding, supra, note 16, p. 56.

[22] This euphoric feeling is influenced by three factors: the amount of the dose, the set of the user, and the setting in which it is used. The dose is the potency of the marihuana measured by the dose the user gets into his body. By the set is meant a person's personality, his makeup, his attitudes, feelings, knowledge and fantasies. The setting has to do with the social environment in which the drug is smoked. The latter two factors are generally important for all psychoactive drugs but they seem to be particularly important for marihuana. Signal of Misunderstanding, supra, note 16, p. 51. There are instances where a dose of marihuana would have no effect on a person if the set and setting are not appropriate.

[23] Signal of Misunderstanding, supra, note 16, pp. 56, 58.

[24] Signal of Misunderstanding, supra, note 16, p. 61. The report describes certain "social, psychological and behavioral changes among young high school and college-age Americans including many who have used marihuana heavily for a number of years. These changes are reflected by a loss of volitional goal direction." But the commission found that "[n]o evidence exists to date to demonstrate that marihuana use alone caused these behavioral changes either directly or indirectly. . . . If heavy, long-term marihuana use is linked to the formation of this complex of social, psychological and behavioral changes in young people, then it is only one of many contributing factors." Ibid.

334

Marihuana is not addicting,[25] but for heavy, long-term users it can produce a mild psychological dependence[26] in the manner that a person could obtain a habit through ordinary use and routine.[27]

Marihuana does not have a high potential for abuse.[28]  It does not lead to crime or violent

[25] Signal of Misunderstanding, supra, note 16, p. 87; Kaplan, Marijuana—The New Prohibition, pp. 157–67 (1971); Bonnie & Whitebread, "The Forbidden Fruit and the Tree of Knowledge: An Inquiry into the Legal History of American Marijuana Prohibition," 56 Va. L. Rev. 971, 1105; Grinspoon, Marihuana Reconsidered, p. 233 (1971); Hellman, Laws against Marijuana: The Price We Pay, pp. 34–35 (1975).

[26] It is important to distinguish between addiction and psychological dependence.  Fort defined addiction as follows:  "Addiction in recommended terminology by the World Health Organization is now known as physical dependence, so addiction or physical dependence is defined as including two things:  tolerance and secondly, a withdrawal illness . . . absent syndrome.  Tolerance means with daily use over a period of weeks or months of large and increasing doses of a given drug.  The body adapts to that so that more and more is required to produce a desired effect, and that tolerance occurs with all the depressant drugs, alcohol, barbiturates or related sedative hypnotics and, of course, all the narcotics, whether it's heroin, morphine, opium, methadone, demerol, etc.  The second component is this withdrawal illness.  That means when the drug is abruptly discontinued or sharply reduced in amount as compared to the amount the body has grown used to, an illness is precipitated which with heroin, morphine or other narcotics involves running of the nose, tearing of the eyes, a rise in body temperature and blood pressure, goose flesh, sweating, nausea, vomiting, diarrhea."

He defined habituation as follows: "In technical language, habituation is supposed to be officially referred to now as psychological dependence.  Habituation and psychological dependency means you get so used to something after a period of regular use or exposure to it, and that something need not be a drug.  You get so used to it that when the phenomenon or substance is no longer available to you, you get restless, irritable, out of sorts, so to speak, don't know what to do with yourself . . . .  In a sense, all the drugs can produce habituation such as caffeine, nicotine, alcohol, marijuana."

[27] "Although evidence indicates that heavy, long-term cannabis users may develop psychological dependence, even then the level of psychological dependence is no different from the syndrome of anxiety and restlessness seen when an American stops smoking tobacco cigarettes."  Signal of Misunderstanding, supra, note 16, p. 87.

[28] Signal of Misunderstanding, supra, note 16, p. 53.

behavior.[29]   "Marihuana use, in and of itself, is neither causative of, nor directly associated with crime, either violent or non-violent. In fact, marihuana tends to be underrepresented among assaultive offenders, especially when compared with users of alcohol, amphetamines and barbiturates." Drug Use in America, p. 165. The drug is not aphrodisiac[30] and does not cause death.[31]

One misconception must be put to rest and that is the "stepping stone argument."[32] "[T]he 'stepping stone argument' that marijuana use leads to use of 'hard narcotics' has no scientific basis. The President's Commission on Law Enforcement and Administration of Justice, *Task Force Report: Narcotics and Drug Abuse,* found at pp. 13–14: 'The charge that marihuana "leads" to the use of addicting drugs needs to be critically examined. There is evidence that a majority of the heroin users who come to the attention of public authorities have, in fact, had some prior experience with marihuana. But this does not mean that one leads to the other in the sense that marihuana has an intrinsic quality that creates a heroin liability. There are too many marihuana users who do not graduate to heroin, and too many heroin addicts with no known prior marihuana

[29] Marihuana does not lead a person to criminal behavior which he might not have participated in without the drug. Grinspoon testified: "[I]f it has any relationship to crime and violence it's a negative one. . . ." "In sum, the weight of the evidence is that marihuana does not cause violent or aggressive behavior; if anything, marihuana generally serves to inhibit the expression of such behavior. Marihuana-induced relaxation of inhibitions is not ordinarily accompanied by an exaggeration of aggressive tendencies." Signal of Misunderstanding, supra, note 16, p. 73; Kaplan, supra, note 25, p. 136; Bonnie & Whitebread, supra, note 25, p. 1105.

[30] Bonnie & Whitebread, supra, note 25, p. 1105.

[31] Fort testified: "Even with enormous doses in human beings no deaths have been reported."

[32] Signal of Misunderstanding, supra, note 16, pp. 87–88; Grinspoon, supra, note 25, pp. 235–52; Bonnie & Whitebread, supra, note 25, p. 1105; Hellman, supra, note 25, p. 35.

use, to support such a theory. *Moreover there is no scientific basis for such a theory.* The basic text on pharmacology, Goodman and Gilman, The Pharmacological Basis of Therapeutics (Macmillan 1960) states quite explicitly that marihuana habituation does not lead to the use of heroin.' (Emphasis added.)" *People* v. *Sinclair,* 387 Mich. 91, 111.

There is evidence that marihuana can cause psychological disturbances in users who have a predisposition to these disorders, but such disturbances might equally be precipitated in these persons by alcohol, other psychoactive drugs or a traumatic event.[33]  And there is evidence that marihuana use has an effect on driving performance.[34]  It should, however, be noted that there is other legislation to protect society by imposing criminal penalties for operating a motor vehicle under the influence of intoxicating liquor or drugs.[35]

[33] Grinspoon testified as follows: "[O]ne must consider the possibility that cannabis could, given a susceptible person, precipitate a psychosis. That is to say, in a person who is prepsychotic. It is important to qualify that because that same person is susceptible to something like a surgical assault on his body or severe automobile accident or the loss of a loved one or even an alcoholic debauch. Any one of these might be the last straw that breaks the camel's back, and in that sense I would have to say, and that I think it is possible for cannabis to precipitate a psychosis." See also Signal of Misunderstanding, supra, note 16, p. 90; *People* v. *McCabe,* 49 Ill. 2d 338, 344.

[34] National Commission on Marihuana and Drug Abuse, "Drug Use In America: Problems in Perspective," p. 184 (1973) (hereinafter cited as "Drug Use in America"). But in "a controlled study conducted recently [1969] by the Bureau of Motor Vehicles of the state of Washington, it was found that marihuana causes significantly less impairment of driving than alcohol does." Grinspoon, "Marihuana," 221 Sci. Am. 17, 23 (1969). Moderate doses of marihuana do not produce any marked alteration in coordination or reaction time, but a significantly stronger dose impairs coordination and reaction time. Fort, however, testified that "the majority of marihuana users have a kind of self-titration when they use the drug, meaning that if they find that if they use more than an average or moderate dose they fail to get the beneficial effect that they are seeking . . . and, therefore, it's kind of a built in control so that they don't go beyond that."

[35] General Statutes § 14-227a.

In sum, the overwhelming evidence presented to this court indicates that experimental, intermittent and moderate use of marihuana "carries minimal risk to the public health" and that "neither the marihuana user nor the drug itself can be said to constitute a danger to public safety."[36] These physiological, psychological, socioeconomic and societal effects of marihuana must be compared to those of the other members of the classification, to wit: barbiturates and amphetamines.

The short-term psychological effects of a barbiturate[37] are that it acts as a depressant on the brain comparable to narcotics and alcohol, which produces sleep, coma and stupor.[38] There is an impairment of the health of the individual as a result of loss of appetite, malnutrition and lack of attention to personal hygiene. The long-term effects are that a user has the feeling that life centers around him, there is an impairment of social and vocational functioning and a tendency to become a drug abuser. The user develops a tolerance for the drug and physical dependence on it; he then begins to use it daily as a pattern of his life. When taken off the drug, the user experiences withdrawal illness.[39] This withdrawal illness is characterized by convulsions and toxic psychosis.

Barbiturates can increase aggression[40] and lead to crime, particularly in the case of those who are predisposed to violence, in much the same way as

---

[36] See Signal of Misunderstanding, supra, note 16, pp. 78, 91.

[37] For the statutory definition of barbiturate-type drugs, see note 9 supra.

[38] Soler, supra, note 11, p. 615.

[39] Kaplan, supra, note 25, p. 200.

[40] Kaplan, supra, note 25, p. 136.

alcohol.[41]  Overdose of the drug can cause death;[42] death may also be caused by untreated convulsions experienced by the user in withdrawal.

When asked whether it was reasonable to classify marihuana with barbiturates in terms of the effect on users and the potential for abuse, Fort testified: "It's not reasonable at all.  They are unlike each other pharmacologically, they differ markedly in their short-term effect, differ markedly in their long-term effect.  When you compare heavy use of the two drugs, marihuana has a very, very low potential for abuse and barbiturates have a high potential for abuse. Marihuana does not produce death, even in the enormous doses, and barbiturates frequently produce death or commonly produce it with large doses."[43]

Authorities also agree that amphetamines[44] are truly dangerous drugs which have become a major problem in the United States.[45]  The short-term physiological effects of the drug are increase in pulse rate, increase in alertness, restlessness, agitation, nervousness, tremors, increase in blood pressure and increase in perspiration.  The short-term psychological effects are euphoric feeling, a sense of confidence, insomnia and diminution of appetite.

The most prevalent difference between amphetamines and marihuana is to be found in the long-term psychological effects, which for amphetamines are characterized by a severe psychological dependence

[41] Drug Use in America, supra, note 34, p. 165.

[42] "Barbiturates appear to be related to death in two ways:  consumption of lethal doses is a common means by which persons commit suicide; and their combined effects with alcohol sometimes result in death even in cases where suicide is not apparent.  It has been estimated that 400 barbiturate-induced suicides occur each year in New York City alone."  Drug Use in America, supra, note 34, p. 194.

[43] See People v. McCabe, 49 Ill. 2d 338, 345.

[44] For the statutory definition of amphetamine-type substances, see note 10 supra.

[45] Kaplan, supra, note 25, p. 200; Soler, supra, note 11, p. 615.

and addiction.[46]  Amphetamine use can cause psychosis which is indistinguishable from paranoid schizophrenic reaction.  The drug can cause serious hallucinations and delusions, particularly paranoid delusions.  The use of amphetamines can cause death.  Amphetamines have a high potential for abuse and frequently lead to crime and violence.[47]  One particular amphetamine, methamphetamine (commonly referred to by the street name "speed") should be singled out.  The violence, paranoia and

---

[46] Grinspoon explained his opinion that amphetamines are addicting drugs as follows:  "Well, it gets to be a very technical argument but it has to do with . . . the craving . . . the withdrawal syndrome, [and] tolerance, [as] they all exist. . . .  [M]ost people have not believed they are addictive because the opiates have been used as the model for the withdrawal syndrome, . . . [and] the withdrawal syndrome with amphetamines is different.  It involves changes in the electroencephalogram and R.E.M. sleep, which can clearly be demonstrated to occur when a person gives up amphetamines.  [W]hen a person who is withdrawing from opiates, and he is in the middle of this withdrawal syndrome, you can interrupt it and stop the whole thing by giving him some opium, just as an alcoholic can stop the D.T.'s by giving him some alcohol, [and] make him appear to be normal again by giving him the drugs.  [W]ell, . . . [as to] these changes that occur in amphetamines during withdrawal, if you give amphetamines the EEG goes back to normal, the R.E.M. time sleep goes back to normal and so on.  It is for these reasons that I think that only in the narrow sense that we accept the opium paragon as the only one for addiction can we believe that amphetamines are not addicting.  If you accept as my contention that there are other paragons, · amphetamines are addicting.  [B]ut in any event no authority will dispute that one can develop a very severe . . . dependence where the craving is enormous and so forth.  There are a few who dispute that."

There apparently is some disagreement as to whether the amphetamines can be addicting.  But whether or not they are addicting, all authorities agree that the user can develop a strong psychological dependence on amphetamines.  *People* v. *McCabe*, supra, note 43; Kaplan, supra, note 25, p. 200.

[47] Dr. Grinspoon testified:  "If you take a drug like amphetamines, there is evidence that a person will . . . more likely become more irritable, becomes paranoid, and many report of people striking out just at random at other people and hurting them or getting involved in fights with them.  There seems to be some inherent psychopharmacological property of the drug which does seem to enhance this kind of behavior, but in the case of marihuana this is not so."

physical depletion which result from this drug are substantially more severe than result from other forms of amphetamines.[48]

Fort also testified that marihuana and amphetamines "are totally dissimilar pharmacologically, socioeconomically in their street-pattern use and their potential for abuse and in their effect both from short-term and long-term use, so there is no rationale for . . . [classifying] them together with marihuana."

The defendant also claims that the exclusion of other psychoactive drugs, which are far more dangerous than marihuana, from the prohibitive classification is arbitrary and irrational and therefore violates the equal protection clause. The defendant points out that the psychoactive drugs alcohol and nicotine[49] are more dangerous than marihuana to the public health and welfare and that the possession and sale of these drugs are not outlawed by § 19-480 of the General Statutes; these drugs are specifically excluded as controlled substances under § 19-443 (8) and are not subject to the criminal penalties imposed under chapter 359 of the General Statutes, entitled "Dependency-Producing Drugs." But these drugs are controlled or regulated by legislation, and violation of such legislative controls results in misdemeanor penalties.[50]

Federal decisions under the fourteenth amendment do not hold that the legislature is required to

[48] *People* v. *McCabe*, 49 Ill. 2d 338, 346; Soler, supra, note 11, p. 616.

[49] Alcohol and nicotine are psychoactive drugs (see note 16, supra), inasmuch as they are drugs that have the capacity to influence behavior by altering feeling, mood, perception, or other mental states. The general public has failed to recognize this fact. Drug Use in America, supra, note 34, p. 10.

[50] Examples of these legislative controls are: (pertaining to alcoholic liquor) General Statutes §§ 30-74, 30-86, 30-87, 30-113; (pertaining to nicotine) § 53-344.

regulate or prohibit all harmful substances just because it regulates some of those substances. "It is no requirement of equal protection that all evils of the same genus be eradicated or none at all." *Railway Express Agency, Inc.* v. *New York,* 336 U.S. 106, 110; see *Dandridge* v. *Williams,* 397 U.S. 471, 486; *United States* v. *Kiffer,* 477 F.2d 349, 355 (2d Cir.), cert. denied, 414 U.S. 831. "Assuming some degree of control of marijuana use is permissible, it does not follow that the political obstacles to placing controls on alcohol and tobacco should render the legislature unable to regulate other substances equally or less harmful. It is not irrational for the legislature to regulate those public health areas where it can do so, when there exists other areas where controls are less feasible." *Ravin* v. *Alaska,* 537 P.2d 494, 512 (Alas.).

But the obiter dicta of the Connecticut Supreme Court indicates that irrational exemptions from a statute would be a denial of the guarantees under the due process clause. Our Supreme Court has consistently enunciated this rule as follows: "Legislation, even though it is within the police power, may be violative of due process if it is discriminatory in that it deals differently with different classes of persons without the existence of some natural and substantial difference, germane to the subject and purposes of the legislation, between those within the class included and those whom it leaves untouched." *Schwartz* v. *Kelly,* 140 Conn. 176, 181; *State* v. *Hurliman,* 143 Conn. 502, 505–506; *Lyman* v. *Adorno,* 133 Conn. 511, 521; *State* v. *Cullum,* 110 Conn. 291, 295.

Whether or not such an exemption is the basis for a constitutional attack, it is still the duty of the court in this case to review the effects on the public health and welfare of the psychoactive drugs which are excluded from the classification and com-

pare them to marihuana. The purpose of this examination is to aid the court in determining whether there is a rational basis for the inclusion of marihuana and whether such inclusion has relevancy to the subject and purposes of the legislation.

Heavy use of alcohol is clearly more dangerous than marihuana for the user and society.[51] Alcohol is a depressant similar to barbiturates and narcotics. It causes an increase in chemical activity of the brain and loss of alertness, judgment and coordination. With larger doses, it causes drowsiness, sleep, stupor and coma. Long-term excessive use causes cirrhosis of the liver and brain damage. Cirrhosis of the liver is the actual destruction of the cells of the liver, causing scars which result in the inability of the liver to perform its metabolic functions. The brain damage is the direct destruction of brain cells which results in atrophy of the brain, that is, the shrinking of the brain with consequent impairment of memory, judgment, reasoning and ability to function in general.

Alcohol leads to habituation and can be addicting.[52] Its use can lead to violence and crime.[53] "There is no doubt that alcohol is involved in a large percentage of crimes of violence in the United States, especially homicide. This involvement is certainly consistent with alcohol's known effect of releasing emotion and lessening cortical control over anger." Kaplan, Marijuana—The New Prohibition, p. 304 (1971). It is generally accepted that alcohol is a major contributing factor in traffic accidents and fatalities; alcohol can cause chronic and acute psychoses from heavy use, can cause death, and is

---

[51] *People* v. *Sinclair*, 387 Mich. 91, 107; Kaplan, supra, note 25, p. 305; Soler, supra, note 11, p. 637.

[52] Kaplan, supra, note 25, p. 274.

[53] Drug Use in America, supra, note 34, p. 165.

a major factor in suicides.[54] The psychoactive drug, alcohol, has a devastating effect on public health and safety. "Comparison of the effects of marijuana use on both the individual and society with the effects of other drug use demonstrates not only that there is no rational basis for classifying marijuana with the 'hard narcotics,' but, also, that there is not even a rational basis for treating marijuana as a more dangerous drug than alcohol." *People* v. *Sinclair*, 387 Mich. 91, 104.

Nicotine also has widespread use; about sixty to seventy million people in this country regularly use the psychoactive drug nicotine. Long-term use of nicotine may result in lung cancer, high blood pressure and stroke, bronchitis and emphysema, and coronary heart disease.[55] Nicotine abuse results in approximately four hundred thousand deaths each year in the United States. None of these diseases is caused by the use of marihuana. Nicotine also leads to a strong habituation which is common among smokers.

This court has been unable to find any case wherein the constitutional issue of the rationality and reasonableness of classifying marihuana with drugs such as barbiturates and amphetamines has been decided. The issue of classifying marihuana with narcotics has been before the courts on several occasions. In those instances some courts have held that such a classification violates the equal protection clause and other courts, for a variety of reasons, have failed to declare the legislation unconstitutional.[56] It would be of help to review some of these cases.

---

[54] Signal of Misunderstanding, supra, note 16, p. 14; Drug Use in America, supra, note 34, pp. 183, 192.

[55] Signal of Misunderstanding, supra, note 16, p. 15.

[56] For a review of these cases, see Soler, supra, note 11, pp. 641–76.

*People* v. *McCabe,* 49 Ill. 2d 338, held unconstitutional the classification of marihuana with narcotics for penalty purposes as being in violation of the equal protection clause. The court in dicta opted for classification of marihuana with amphetamines and barbiturates for penalty purposes. This rationale was obviously based on the court's being confronted with the classification of marihuana as a narcotic substance which called for a minimum penalty of ten years, while the classification of amphetamines and barbiturates under a different Illinois act provided for a penalty of not greater than one year. It is further apparent that the case was argued by the defendant on this theory. Nevertheless, the court in its opinion discussed the very serious and harmful effects of amphetamines and barbiturates and compared them to marihuana, which it concluded to be a relatively harmless drug. This analysis by the court clearly demonstrates the significant differences between marihuana and the psychoactive drugs—amphetamines and barbiturates.

In *People* v. *Sinclair,* 387 Mich. 91, the court, voiding the conviction of the defendant for illegal possession of marihuana, was divided on its reasons, but two of the justices were of the opinion that the statutory classification of marihuana with narcotics was unconstitutional in that it denied equal protection of the law.

The federal District Court in *United States* v. *Maiden,* 355 F. Sup. 743 (D. Conn.), found the classification of marihuana with narcotics to be constitutional because federal legislation did separate the drugs for penalty purposes. The court also pointed out that Congress established a scheme of penalties that only applied to marihuana. Id., 748. This is not the case under the Connecticut statutes. Possession with the intent to sell or dispense marihuana, whether in small amounts or not and whether

for remuneration or not, is classified in § 19-480 (b) with such drugs as amphetamines and barbiturates. The court in *Maiden* did concede that if marihuana was classified with hard drugs for penalty purposes the argument of the defendant might have had force. In *United States* v. *Kiffer*, 477 F.2d 349 (2d Cir.), cert. denied, 414 U.S. 831, the court also upheld the constitutionality of a federal statute prohibiting possession with intent to distribute marihuana, on the same ground as in *Maiden,* i.e., Congress provides a different set of penalties for marihuana. The court further noted (p. 353) that Kiffer was convicted of possession of two tons of marihuana and alluded to the "commercial distribution of marihuana." Apparently the trial court also had evidence before it which put in question the "present state of knowledge of the effects of marihuana." Id., 353. This is not the case before this court; the empirical data presented to this court are sufficiently certain and complete to support its conclusions.

The only conclusion to which this court can come is that there are substantial differences between marihuana and psychoactive drugs such as amphetamines and barbiturates. Marihuana is a relatively mild drug which causes minimal risk to the public health and does not constitute a danger to public safety.[57] Amphetamines and barbiturates are drugs

---

[57] These conclusions about marihuana have been reached in most credible studies that have been undertaken. The first such study was the Indian Hemp Drugs Commission appointed by the British Government and published in 1894. Grinspoon, supra, note 25, p. 277. Likewise, studies which followed found marihuana to be benign. They were: Panama Canal Zone Study of 1925, "Marihuana Smoking in Panama," 73 Military Surgeon 269; The Marihuana Problem in the City of New York (1944); Signal of Misunderstanding, supra, note 16; Canadian Government Commission of Inquiry into the Non-Medical Use of Drugs, Cannabis, Rep. (1972); Drug Use in America, supra, note 34; and the study financed by the Army and conducted between April, 1973, and August, 1974, under the direction of J. H. Mendelson, professor of psychiatry, Harvard Medical School, 3 Juvenile Justice Digest 19.

which seriously affect the health of the user and have a substantial adverse effect upon the social and economic well-being of society and public safety. The irrationality of this classification is put in sharper focus by considering that other psychoactive drugs such as alcohol and nicotine, which are probably more destructive in their effects on society than marihuana, are not included.[58] Although the legislature may not have been required to include these other drugs in the prohibitive classification under § 19-480 (b), the exclusion certainly demonstrates that there was no intention to outlaw all psychoactive drugs. Therefore, it is obvious that the legislature intended to include in this classification under § 19-480 (b) only those psychoactive drugs which have a serious harmful effect upon the public health and welfare. Marihuana does not have this effect.

It becomes clearly apparent that the classification of marihuana under § 19-480 (b) for penalty purposes does not rest on grounds which have a fair and substantial relation to the purposes of this legislation, nor is there any state of facts which can reasonably be conceived by this court to justify such a classification.[59] This court must conclude that the classification of marihuana with the dangerous psychoactive drugs—amphetamines and barbiturates—under § 19-480 (b) is irrational and unreasonable, and therefore in violation of the equal protection clauses of the state and federal constitutions.

[58] Drug Use in America, supra, note 34, p. 249.

[59] The statute in question as it applies to marihuana cannot withstand the constitutional challenge whether the rational relationship test to be applied is that the classification must "rest upon some ground of difference having a fair and substantial relation to the object of the legislation"; *Royster Guano Co.* v. *Virginia*, 253 U.S. 412, 415; or upon the standard that a "statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it." *McGowan* v. *Maryland*, 366 U.S. 420, 426; see Soler, supra, note 11, p. 607; note, *"Boraas* v. *Village of Belle Terre:* The New, New Equal Protection," 72 Mich. L. Rev. 508.

The court feels compelled to comment on the practical effects of the present classification of marihuana with dangerous drugs for penalty purposes. Marihuana is widely used. The National Commission on Marihuana and Drug Abuse in 1972 estimated that twenty-four million Americans have at least tried the drug once.[60] Although the incidence of use is greatest among young people, use of marihuana is found in all age groups and "in all socioeconomic groups and occupations, though slightly more predominant among persons with above-average incomes."[61] Occasional and regular use of marihuana "is almost equally prevalent among sales workers, clerical workers, skilled, semi-skilled and unskilled workers, managers, owners, professionals and technical workers."[62]

With such widespread use, the dangers of an irrational classification undermine a fundamental respect for the law. Those who have used the drug have not experienced the great harm supposedly attributed to it. The law in such instances loses its credibility. It severely punishes a person for conduct he regards as harmless.[63] It makes it difficult to convince young people that harmful drugs such as amphetamines and barbiturates are really dangerous to health and society when they are classified with marihuana.[64] It encourages young people freely to use alcohol and other psychoactive drugs which are not prohibited by the classification.[65]

The practical aspects of the problem do not stop there. The number of persons arrested for violation of the marihuana laws have steadily increased. It was reported that during the year of 1973, 420,000

---

[60] Signal of Misunderstanding, supra, note 16, p. 26.

[61] Id., p. 32.

[62] Ibid.

[63] Hellman, supra, note 25, p. 29.

[64] Id., p. 31; Kaplan, supra, note 25, p. 38.

[65] Signal of Misunderstanding, supra, note 16, p. 145.

were arrested in the United States, an increase of one-third from 1972.[66]  The National Commission on Marihuana and Drug Abuse reports that 81 percent of these individuals have no prior record of convictions of any crime and 91 percent have never been convicted of a drug-related crime.[67]  The social costs of enforcing these laws is staggering on these individuals and our society, and overwhelming on our law enforcement agencies.[68]

It should be emphasized that marihuana is a psychoactive drug, and like all psychoactive drugs, including alcohol and nicotine, it is potentially harmful depending on the intensity, frequency and duration of use.  "The state has a legitimate concern with avoiding the spread of marijuana use to adolescents who may not be equipped with the maturity to handle the experience prudently . . . ." *Ravin* v. *Alaska*, 537 P.2d 494, 511 (Alas.).  Therefore, under the police power of the state, the legislature may exercise its jurisdiction by prohibiting or at least controlling the distribution of marihuana.[69]  But in doing so, it may not arbitrarily and irrationally classify marihuana for penalty purposes with drugs which are far more dangerous.

The motion to quash is granted.

---

[66] Note, "White House Announces Its New Perspectives On Pot," 16 Crim. L. Rep. 2183.

[67] Signal of Misunderstanding, supra, note 16, p. 622.

[68] See 15 Crim. L. Rep. 2066.

[69] Quaere whether under the present state of facts the possession and use of marihuana can be criminalized.  Are such laws in violation of the rights of privacy?  If so, can it be said that the state under its police power can show a compelling reason to justify the invasion of this right of privacy?  See *Griswold* v. *Connecticut*, 381 U.S. 479; *Stanley* v. *Georgia*, 394 U.S. 557 . . . ; *Roe* v. *Wade*, 410 U.S. 113; see *People* v. *Sinclair*, 387 Mich. 91, 131 (concurring opinion); Signal of Misunderstanding, supra, note 16, p. 142; *Ravin* v. *Alaska*, 537 P.2d 494, 504 (Alas.).