EDWIN C. ROSS *v.* STATE OF INDIANA.

[No. 1-576A69. Filed March 21, 1977. Rehearing denied April 22, 1977. Transfer denied December 27, 1977.]

*Woodrow S. Nasser,* of Terre Haute, for appellant.

*Theodore L. Sendak,* Attorney General, *David L. Steiner,* Deputy Attorney General, for appellee.

ROBERTSON, C.J.—Defendant-appellant, Edwin C. Ross (Ross), was charged by information with delivery of a controlled substance, to wit: marijuana. He was convicted by a jury of that charge and now brings this appeal.

We affirm.

The facts most favorable to the verdict follow. Opha Presnell, a State Conservation Officer, was patrolling in Sullivan County with Deputy Murl Singleton of the Sullivan County Sheriff's Department on May 25, 1975, when they came upon an empty auto beside a road in a strip mine area. After stopping to investigate, they both walked to the top of a nearby "stripper hill" and observed a group of young people, one of whom was Sheila Pinkston, a girl thirteen years of age. When she saw the officers, she threw a plastic bag down the hill. The officers retrieved the bag, and, suspecting it was marijuana, arrested those in the group. Two additional plastic bags were then found in the auto.

Thereafter, testimony by Sheila Pinkston served as the basis for the information against Ross. The information states in pertinent part.

"Sheila Marie Pinkston, being duly sworn upon her oath says that Edwin C. Ross late of said County of Sullivan, and State of Indiana, did then and there unlawfully deliver a controlled substance, to wit: marijuana, contrary to the form of the statute in such cases made and provided and against the peace and dignity of the State of Indiana."

Ross was so charged by information on May 27, 1975.

Ross first alleges that the trial court erred in overruling his motion to dismiss. In his motion, Ross contended that what

is now codified as IC 1971, 35-24.1-1-1 *et seq.* (Burns Code Ed.) and subsequent acts pertaining to marijuana and penalties applicable thereto are unconstitutional as violating the proscription of cruel and unusual punishment in the Eighth Amendment and the equal protection provision of the Fourteenth Amendment, both to the U.S. Constitution. Further, he contended that the information failed to specify the criminal charge with sufficient certainty to inform him of the exact charge against him.

Ross's contention that the penalty for delivery of marijuana (5 to 20 years) is cruel and inhuman punishment is a subjective appraisal by Ross which is directed to the wrong branch of government. As stated in *Vacendak* v. *State* (1976), 264 Ind. 101, 340 N.E.2d 352:

"The determination of appropriate penalties for crimes committed in this State is a function properly exercised by the legislature. The Judiciary will disturb such a determination only upon a showing of clear constitutional infirmity." (Citations omitted.)

Ross has made no such showing.

It is argued that the classification of marijuana with "hard narcotic drugs", amphetamines, and barbiturates for penalty purposes is irrational and thus violative of the equal protection clause of U.S. CONST. amend. XIV, § 1. For this proposition, Ross cites *State* v. *Anonymous* (1976), 32 Conn. Supp. 324, 355 A.2d 729, a Connecticut Superior Court decision. We observe that that court, unlike the trial court in the case here at bar, had before it extensive testimony and data regarding the properties and use of marijuana. Such testimony and data apparently convinced the Connecticut Superior Court that marijuana was miscast when it was classified with certain other controlled drugs and substances.

As Justice Prentice stated in *Sidle* v. *Majors* (1976), 264 Ind. 206, 341 N.E.2d 763:

". . . we recognize that the Legislature is vested with wide latitude of discretion in determining public policy.

Therefore, every statute stands before us clothed with the presumption of constitutionality, and such presumption continues until clearly overcome by a showing to the contrary."

Conflict among the experts, scientific data, the courts, and lay opinion is as prevalent today as it was when the Legislature classified marijuana in the manner that it did. In time, perhaps facts will surface which will resolve the issue and demonstrate conclusively that there is no rational basis for the classification of marijuana with certain other controlled drugs and substances. As no such facts are here in evidence, we defer to the expressed judgment of the Legislature in this matter, the presumption of constitutionality of that judgment not having been overcome.

As to Ross's argument that marijuana is no more harmful than alcohol or tobacco, we subscribe to the succinct logic used in *United States* v. *Kiffer* (2nd Cir. 1975), 477 F.2d 349, *cert. denied*, 414 U.S. 831, 94 S.Ct. 62, 38 L.Ed. 2d 65 and quoted in *State* v. *Strong* (S.D. 1976), 245 N.W.2d 277:

"If Congress decides to regulate or prohibit some harmful substances, it is not thereby constitutionally compelled to regulate or prohibit all. It may conclude that half a loaf is better than none."

Ross has failed in his constitutional attacks on the statutes.

The remaining issue concerning the overruling of Ross's motion to dismiss is that of the alleged defective information. Ross asserts that the information, heretofore set forth, contravenes Ind. Const. art. 1, § 12 in that it does not properly advise him of the charges against him and does not advise him of the identity of the alleged receiver of the controlled substance or any other facts necessary to the preparation of a defense and avoidance of double jeopardy. Ross argues that because the information does not advise him of the "exact setting" and person to whom the alleged delivery of the controlled substance was made, the State could, theoretically, use the vague information repeat-

edly, thereby putting Ross in multiple jeopardy for a solitary violation.

We are satisfied that the offense charged in the information is stated with such certainty that the accused, the court, and the jury could determine the crime for which conviction was sought. *Blackburn* v. *State* (1973), 260 Ind. 5, 291 N.E.2d 686.

If Ross had made multiple deliveries of marijuana in Sullivan County on May 24, 1975, we can appreciate that he might have some difficulty determining the specific crime for which conviction was being sought and some difficulty preparing an intelligent defense. That possibility exists with any offense which is subject to repetition, and, as we see it, only by making time of the essence for such offenses and requiring that the time of the offense be specified in an information will an accused be positively apprised of the specific offense being charged. Despite that reasoning, we will not impair the efficacy of the information simply because an accused has or could have committed repeated offenses on the date alleged in the information. The information in the case at bar complies with IC 1971, 35-3.1-1-2, (Burns Code Ed.). We find no error in the overruling of the motion to dismiss.

Ross has, in separate assertions, alleged error by the trial court in its admission of testimony by one Paul E. Asa, an Indiana State Police chemist, and its admission into evidence of State's Exhibit #4, an Indiana State Police laboratory report. As these issues are interrelated, we shall group them for purposes of discussion.

Ross contends that because the State failed to comply with a discovery order, neither the testimony of Paul Asa nor State's Exhibit #4 should have been admissible. Generally, the proper remedy for the State's failure to comply with a discovery order is an order compelling compliance or a continuance. *Upshaw* v. *State* (1976), 170 Ind. App. 206, 352 N.E.2d 104; *Buchanan* v. *State* (1975), 166

Ind. App. 430, 336 N.E.2d 654. The record discloses only an objection at trial to the introduction of State's Exhibit #4. By failing to invoke the proper remedy, Ross has waived any error. Additionally, it appears from the record that Ross had prior knowledge of the witness and the exhibit and was not surprised by the State.

It is next alleged that the trial court erred in refusing Ross's motion to strike Paul Asa's testimony. Ross contended at trial and contends here that Paul Asa was not properly qualified as an expert witness in that it was not shown that he had received any special training.

It is within the discretion of the trial court to determine the expertise of a witness. *Guyton* v. *State* (1973), 157 Ind. App. 59, 299 N.E.2d 233. Asa testified that he was an Indiana State Police technician specializing in blood alcohol and marijuana analysis and had been so engaged for approximately nine or ten years. As an expert may be qualified by either practical experience or formal training, *Guyton, supra,* we find no abuse of discretion or error by the trial court on this issue.

Ross contends that the trial court erred in admitting into evidence, over his objection, State's Exhibits 1, 2, and 3. These exhibits were three bags of marijuana, #1 retrieved from where it had been thrown by Pinkston and #2 and #3 discovered as the result of a search of the aforementioned empty auto. He urged that the exhibits should be excluded in that they were seized in the course of an illegal search (fruit of the poison tree doctrine). U.S. CONST. amend. IV.

From the facts of this case, it appears that no one's Fourth Amendment rights were violated. More important though, Ross had no proprietary interest in either the bags of marijuana or the auto searched; neither was he even present of the time of the search. He had no standing to assert the Fourth Amendment rights of another. *Mabra* v. *Gray* (7th Cir. 1975), 518 F.2d 512.

It is alleged that the trial court erred when, over Ross's objections, it permitted State's witness John Danberry to testify regarding the results of polygraph examinations given to Ross and Pinkston. Ross also alleges error in the admission into evidence State's Exhibit #13, a "Stipulation and Agreement" signed by Ross wherein he requested a polygraph examination and waived his privilege against self-incrimination as to the results of that examination. As Ross has failed to present in his appellate brief any argument regarding the admissibility of the "Stipulation and Agreement", we deem such alleged error waived as provided by Ind. Rules of Procedure, Appellate Rule 8.3(A)(7).

First, Ross questions the validity of a May 28, 1975, entry in the record. Such entry, omitting formal parts, reads as follows:

"Comes now Douglas Followell and enters appearance in behalf of the defendant, Edwin C. Ross, and now defendant requests that the Court authorize the defendant and complaining witness, Sheila Marie Pinkston, to take a Lie Detector Test at the State Police Post in Putnamville, Indiana, and that the defendant waives any right to object to the evidence divulged in such hearing for presentation at trial. The Prosecuting Attorney shall make necessary appointments and arrangements for the taking of said examination. RECORD READ AND SIGNED IN OPEN COURT THIS 28th DAY OF MAY, 1975."

This entry was the product of a preliminary proceeding.

It is contended by Ross that the entry is an arbitrary interpretation of "an alleged request by defendant" and that the entry precedes the written waiver (State's Exhibit #13), indicating that the court did not inquire into Ross's understanding of any waivers into which he was entering.

If Ross is taking the position that a waiver of a right or a waiver as to the admissibility of a piece of evidence is ineffective unless it appears in writing over a defendant's signature, that position is flatly incorrect. We find no authority to support it. Neither are we persuaded that there is merit to

Ross's assertion that a waiver should be inoperative unless there is active participation by a Court to determine that a defendant understands the nature of the waiver. While it is true that a trial court is under an obligation to actively participate in the determination of a defendant's understanding of the rights he is about to forego when a plea of guilty is being entered, a waiver as to the admissibility of a piece of evidence places no such obligation on a court.

As to the issue of whether the May 25, 1975, entry accurately reflected Ross's request, we have before us only the record and the unverified assertion by Ross that the record is incorrect. Under the circumstances, we must assume that the record is accurate.

Absent some sort of waiver or stipulation by the parties, polygraph results are not admissible at trial in a criminal prosecution. *Vacendak* v. *State, supra; Reid* v. *State* (1972), 259 Ind. 166, 285 N.E.2d 279. In the case at bar, there was a waiver, and the admission into evidence of the polygraph results was not error by the trial court.

The next allegation of error concerns the denial by the trial court of Ross's motion for a directed finding of acquittal partially based on the State's failure to establish a proper chain of custody of the aforementioned State's Exhibits #1, #2, and #3. It is maintained by Ross that when these exhibits were held in the safe of the Sullivan County jail they were under the control of someone other than Officer Presnell and were unaccounted for.

To require a showing by the State that there exists absolutely no possibility that evidence might have been subject to tampering or substitution would be to remove from the trier of fact virtually all physical evidence. Justice would soon wither on such a starvation diet. Thus it is that while we do require a complete chain of custody to be established, we do not insist that the State exclude every

possibility of tampering. *Kelley* v. *State* (1974), 161 Ind. App. 253, 315 N.E.2d 382; *Kolb* v. *State* (1972), 258 Ind. 469, 282 N.E.2d 541. "Where the State has introduced evidence which strongly suggests the whereabouts of an exhibit at all times, such evidence will often be considered as sufficient for chain of custody purposes." *Kelley* v. *State, supra.* We find no infirmity in this chain of custody; we find no error by the trial court in denying Ross's motion.

Error is alleged in the trial court's refusal of Defendant's Final Instructions #1, #8, and #10.

Defendant's Final Instruction #1 is as follows:

"Chain of custody is the possession of evidence by the State which must be established and proven to have not been altered, removed, tampered with or in any way changed from its condition at the time of the alleged offense.

Further, the State should present those persons who had custody of such evidence as witnesses to establish said chain of custody and the unaltered condition of such evidence.

It is the duty of the State of Indiana to prove beyond a reasonable doubt that the chain of custody concerning the alleged controlled substance involved herein, has not been interrupted, violated or in any way was hampered by any party having heretofore testified or mentioned as having access to the alleged controlled substance involved herein from May 24, 1975 to December 11, 1975.

If in fact, or by way of circumstantial evidence it appears to you the State has not carefully established that the chain of custody has not been in any way infringed or violated then it will be your responsibility to acquit the defendant."

The above instruction is erroneous in several respects. First, as we have just stated, the State's burden in establishing the chain of custody is not to exclude *every* possibility of tampering. The instruction sets forth a more stringent test than the courts require. Second, the chain of custody for evidence such as marijuana must be shown only from the time of seizure to the time it was tested with conclusive results and not from the time it was purchased from the defendant to the time the trial was concluded, as the instruction suggests. *Zupp* v. *State* (1972), 258

Ind. 625, 283 N.E.2d 540; *Mayes* v. *State* (1974), 162 Ind. App. 186, 318 N.E.2d 811. Most important, though, is that the instruction, in essence, attempts to make the chain of custody an element of the crime. The establishment of a chain of custody goes to the admissibility of an exhibit, and the court makes that determination. Once the trial court has admitted evidence, the jury is not entitled to second-guess that decision but may only accord to the evidence whatever weight it wishes. Neither does the jury have a responsibility to acquit a defendant if it accords *no* weight to a particular piece of evidence which is not essential to the State's case. A tendered instruction that incorrectly states the law may properly be refused by the trial court. *Saret* v. *State* (1975), 166 Ind. App. 114, 333 N.E.2d 920.

Defendant's Final Instructions #8 and #10 would have advised the jury regarding reasonable doubt and resolution of doubt in favor of the presumption of innocence, respectively. As Final Instructions #4, #5, #7, and #10, as actually given by the trial court, adequately covered the substance of Ross's tendered instructions, the failure by the trial court to give those tendered instructions is not error. *Timm* v. *State* (1976), 265 Ind. 537, 356 N.E.2d 222.

Finally, Ross alleges that the jury was improperly constituted and that the jury's verdict was thus tainted. The bases for this allegation are that one juror, David Jones, became a deputy sheriff after the trial and that another juror, Esther Bezy, was the wife of the president of the Sheriff's Merit Board and, further, that neither juror responded in the affirmative to the following inquiry of defense counsel on voir dire:

"All right, is there any reason that any of you cannot sit as jurors in this case, and that any of you are not in a frame of mind that you should not sit in this case?"

As to Jones, Ross cites *Gaff* v. *State* (1900), 155 Ind. 277, 58 N.E. 74, as authority for his request for a new trial. In *Gaff*, two jurors were, at the time of the trial, deputy sheriffs of the county. In that era, the county did not pay the sheriff

his salary except out of fees earned and collected. Because no judgment for costs could be rendered against the State, the sheriff had a pecuniary interest in securing convictions in criminal cases. Thus, the Indiana Supreme Court held that the deputies were not competent jurors.

In the case at bar, there is no indication that Jones was even in communication with the sheriff until after the trial. *Gaff, supra,* is not here pertinent, and we find no authority suggesting that incompetency might be retroactively applied.

As to Bezy, Ross relies upon *Johnston* v. *State* (1959), 239 Ind. 77, 155 N.E.2d 129, and *Barnes* v. *State* (1975), 263 Ind. 320, 330 N.E.2d 743. In *Johnston,* a new trial was granted where a juror in a murder trial falsely concealed the fact she was a second cousin to the victim. That juror was statutorily incompetent as a disinterested person under what is now codified as IC 1971, 1-1-4-1 (Burns Code Ed.). In *Barnes, supra,* the case was remanded to the trial court to determine if a juror knew at the time of voir dire that her husband was a second cousin to a member of the prosecutor's staff.

In both of the above cases it was of concern to the Supreme Court that there had been or might have been an intentional concealment by the respective jurors of their relationships to parties to the action. Here, Bezy was not statutorily incompetent nor was she related to a party to the action. There is no indication in the record that her failure to give an affirmative answer to the aforementioned inquiry on voir dire was an attempt to conceal information from the defense. It is our view that Mrs. Bezy's link to the Sheriff's Department is too remote to support a presumption of bias on her part. We cannot agree with Ross's contention that the jury was improperly constituted.

Several other assignments of error have been raised by Ross, but as they are unsupported by any citation of authority as required by Ind. Rules of Procedure, Appellate Rule 8.3

(A) (7), we deem those assignments waived. *Kessler* v. *State* (1976), 171 Ind. App. 181, 355 N.E.2d 262.

We affirm.

Lowdermilk and Lybrook, JJ., concur.

NOTE.—Reported at 360 N.E.2d 1015.