UNITED STATES of America,
Appellee,

v.

John C. KIFFER et al., Appellants.

No. 576, Docket 72-2263.

United States Court of Appeals,
Second Circuit.

Argued Jan. 30, 1973.

Decided April 18, 1973.

Alan Scribner, New York City (Aaron Jaffe and Hubert M. Cunniffe, New York City, Jerome Karp, Brooklyn, on the brief), for appellants.

Robert Clarey, Asst. U. S. Atty. (Robert A. Morse, U. S. Atty., E. D. N. Y., L. Kevin Sheridan, Asst. U. S. Atty., on the brief), for appellee.

Before ANDERSON, FEINBERG and MULLIGAN, Circuit Judges.

FEINBERG, Circuit Judge:

Appellants John Kiffer, James Kehoe and Robert Harmash mount a broadside attack on the constitutionality of the Comprehensive Drug Abuse Prevention and Control Act of 1970 ("the Act"), 21 U.S.C. § 801 et seq., as it applies to marihuana. Appellants were arrested in December 1971, while in possession of approximately two tons of marihuana stored in a warehouse, part of which Kiffer was in the process of delivering by truck to a police informant. All three were indicted for possession of marihuana with intent to distribute, in violation of 21 U.S.C. § 841(a)(1), and conspiracy, in violation of 21 U.S.C. § 846. They were tried in October 1972 before Judge Leo F. Rayfiel and a jury in the United States District Court for the Eastern District of New York. Kiffer and Harmash were convicted on both counts, and Kehoe was convicted on the possession count.[1]

Appellants make two claims—that the criminalization of marihuana is unconstitutional and that, even if this is not so, the classification of marihuana as a Schedule I controlled substance, 21 U.S. C. § 812(c), Schedule I(c)(10), is irrational and arbitrary. As indicated below, the first issue is not before us in the broad form presented. What is before use is the question whether there is a constitutional right to sell marihuana in large quantities, obviously for profit. As to that, we answer no. As to appellants' second argument, we hold that Congress has not acted irrationally. For these reasons, we affirm the judgments of conviction.

I

Before considering the merits of the constitutional arguments, we must deal with a preliminary question. The Government urges that appellants be precluded from challenging either the inclusion of marihuana under the Act or its Schedule I classification because they have failed to exhaust an available administrative remedy.

The remedy adverted to is a procedural feature of the Act added, presumably in part, because the state of scientific knowledge regarding the effects of many of the substances controlled is far from definitive. The Act covers a large number of substances, each of which is assigned to one of five schedules; this statutory classification determines the severity of possible criminal penalties as well as the type of controls imposed.[2] However, under section 811 of Title 21, the Attorney General is empowered to add substances to, or remove substances from, the coverage of the Act, as well as to transfer substances between schedules, all based upon findings that the statutory criteria warrant such modi-

---

1. Harmash was sentenced to three and a half years in prison, Kiffer to three years, and Kehoe to two and a half years. In addition, each received a special parole term of three years and was fined $2,500.

2. For further discussion of the schedules, see Part III infra.

fication.[3] Proceedings preliminary to such changes "may be initiated by the Attorney General (1) on his own motion, (2) at the request of the Secretary [of Health, Education, and Welfare], or (3) on the petition of any interested party." 21 U.S.C. § 811(a). See 21 C.F.R. §§ 308.41–.48. Prior to such a proceeding, the Attorney General is required to obtain an evaluation from the Secretary of Health, Education, and Welfare (HEW), whose recommendations as to "scientific and medical" questions are binding upon the Attorney General. 21 U.S.C. § 811(b). Thus, if new information indicates that the original classification was incorrect or is no longer justified under the statutory criteria, an interested party can, at least in theory, seek a reconsideration of the coverage or classification. Citing the expertise of the Attorney General and of HEW and the need for effective enforcement of the drug laws, the Government stresses that appellants have not used this imposing corrective mechanism; the Government urges that appellants should therefore be estopped from attacking either the constitutionality of including marihuana as a controlled substance at all or the reasonableness of its classification in Schedule I.

We put to one side the obvious rejoinder that the administrative agency (here HEW and the Attorney General acting in concert) does not have the power to declare the Act unconstitutional. Whatever weight such an argument might have in the usual case, timely and successful use of this administrative remedy would have obtained for appellants the very relief they seek from us—a declaration either that marihuana should not be subject to the Act or that it should be covered only in another schedule carrying lesser penalties.

■ Nevertheless, we reject the Government's argument for two reasons. First, there is some doubt whether appellants in fact have an administrative remedy at the present time. The procedures just described for controlling and classifying must be read in conjunction with 21 U.S.C. § 811(d), which applies to any substance that the Single Convention on Narcotic Drugs, March 30, 1961, [1967] 18 UST 1407, T.I.A.S. No. 6298 (ratified by United States in 1967), requires to be controlled.[4] The Director of the Bureau of Narcotics and Dangerous Drugs—the Attorney General's designated agent for this purpose, 28 C.F.R. § 0.100—has taken the position that marihuana is covered by the Convention, see 18 UST at 1410–11, 1559; as a consequence, he has refused to reconsider the marihuana classification pursuant to a petition of an interested party. 37 Fed.Reg. 18097–98 (1972), appeal pending sub nom. National Organization for the Reform of Marijuana Laws v. Ingersoll, Civil No. 72–1854 (D.C. Cir.). Petitioners in that case are vigorously asserting that the Director is in error. We take no position as to that, but it appears now that the administrative route for these appellants would at best provide an uncertain and indefinitely de-

3. Section 811(c) lists eight factors that should be considered in deciding whether to control, decontrol, or transfer a substance. Like the criteria in § 812 governing the classification of the controlled substance, see note 14 infra and accompanying text, these principally concern possible dangers and current knowledge of the effects of the substance. See H.R. Report No. 91–1444, 91st Cong., 2d Sess., U.S.Code Cong. & Admin.News, pp. 4602–03 (1970).

4. Section 811(d) provides:
    If control is required by United States obligations under international treaties, conventions, or protocols in effect on the effective date of this part, the Attorney General shall issue an order controlling such drug under the schedule he deems most appropriate to carry out such obligations, without regard to the findings required by subsection (a) of this section or section 812(b) of this title and without regard to the procedures prescribed by subsections (a) and (b) of this section.
    See H.R. Report, supra note 3, at 4603; 21 U.S.C. § 812(b).

layed remedy. Second, even assuming the existence of a viable administrative remedy, application of the exhaustion doctrine to criminal cases is generally not favored because of "the severe burden" it imposes on defendants. McKart v. United States, 395 U.S. 185, 197, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969). The burden would be particularly harsh in this case, as appellants' remedy is now so uncertain.

Having disposed of this preliminary question, we turn to the arguments addressed to the constitutionality of the statute.

## II

Any court asked to undertake review of the multifarious political, economic and social considerations that usually underlie legislative prohibitory policy should do so with caution and restraint. In this case, the challenged legislation incorporates conclusions or assumptions concerning an array of medical, psychological and moral issues of considerable controversy in contemporary America. Indeed, as a recent perceptive study suggests, "Marijuana, in fact, has become the symbol of a host of major conflicts in our society, each of which exacerbates any attempt at a rational solution to the problem." J. Kaplan, Marijuana—The New Prohibition 3 (1970). This should serve as a reminder that in most instances the resolution of such sensitive issues is best left to the other branches of government.

■ Reflecting this judgment, courts usually review challenged legislative acts with the understanding that they are presumed valid and will be so found unless it is shown that the statute in question bears no rational relationship to a legitimate legislative purpose. E. g., Williamson v. Lee Optical, Inc., 348 U.S. 483, 485–488, 75 S.Ct. 461, 99 L.Ed. 563 (1955); United States v. Carolene Products Co., 304 U.S. 144, 152–154, 58 S.Ct. 778, 82 L.Ed. 1234 (1938). The only cases that require a stricter standard of review are those that involve an infringement of a right explicitly enunci-

ated in the Constitution or otherwise recognized as fundamental. E. g., Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973); Griswold v. Connecticut, 381 U.S. 486, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965); Aptheker v. Secretary of State, 378 U.S. 500, 505–514, 84 S.Ct. 1659, 12 L.Ed.2d 992 (1964). See United States v. Carolene Products Co., supra, 304 U.S. at 152–153 n. 4, 58 S.Ct. 778, 82 L.Ed. 1234.

To invoke this stricter scrutiny in this case, appellants assert the existence of a fundamental "right of the individual to control of his own body and to indulge in private in what may be condemned in public or deemed immoral or unacceptable to society at large." In support of this proposition they cite the Supreme Court decisions in Griswold v. Connecticut, supra, and Stanley v. Georgia, 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969), respectively invalidating convictions for use of contraceptives and for private possession of obscene materials. These cases are of little assistance to appellants. Whatever may be the merits of a claim to a protected right by one who is prosecuted for the private possession or use of marihuana, appellants are not in that position. They stand convicted, not of simple possession or use of marihuana, see 21 U.S.C. § 844(a), but rather of possession of two tons of it with intent to distribute, and of conspiracy to do so. Thus, analogies to the holdings of *Griswold* and *Stanley* are inappropriate. Far more comparable are those decisions holding that, notwithstanding *Stanley's* protection of the ultimate consumer of obscene material, the Government may prohibit the commercial importation or mail distribution of pornography. See United States v. Thirty-Seven Photographs, 402 U.S. 363, 91 S.Ct. 1400, 28 L.Ed.2d 822 (1971); United States v. Reidel, 402 U.S. 351, 91 S.Ct. 1410, 28 L.Ed.2d 813 (1971).

■ Since there is no colorable claim of a fundamental constitutional right to sell marihuana—even partisans of the old economic due process analysis might blush at that notion—appellants

must establish that prohibition of commercial distribution of marihuana lacks any reasoned justification. They have not succeeded in doing so.

Appellants rely principally on the testimony of Dr. Lester Grinspoon, an associate clinical professor of psychiatry at Harvard Medical School and specialist in psychoactive drugs. Dr. Grinspoon testified at a post-trial hearing before Judge Rayfiel on the question of the constitutionality of the marihuana prohibition.[5] In addition, it was stipulated that five other experts [6] would have supported Dr. Grinspoon's conclusions, which were, in brief, that marihuana is neither physically nor psychologically harmful to most users and not particularly susceptible of abuse, and that those few who might suffer ill-effects through overindulgence probably have personality disorders that would lead them to abusive use of whatever drugs they might succeed in obtaining.

In response, the Government submitted an affidavit of Dr. Forrest Tennant of the Department of Psychiatry of the School of Medicine, University of California at Los Angeles, who reported that use of high-grade marihuana by volunteers in a study in which he is engaged "often" induces psychotic episodes. Dr. Tennant recommended against legalization at the present time. While acknowledging the need for reform of the present marihuana laws, Dr. Tennant indicated that legalization would be inappropriate until (1) an easily applied blood or urine test is developed to detect intoxicated drivers,[7] (2) more is learned about the differences between marihuana and hashish, and (3) a system of controls is established to keep marihuana and other harmful substances out of the possession of minors.

On this limited record we are certainly not prepared to conclude that Congress could not reasonably decide that legalized commercial distribution of marihuana would pose a threat to the health of the American public. Moreover, recent discussions of this issue suggest that the present state of knowledge of the effects of marihuana is still incomplete and marked by much disagreement and controversy. Compare, e. g., Bartimo, Marijuana, 30 Fed.B.J. 343 (1971), with Trachtenberg & Paper, Marijuana: A Further View, 31 Fed.B. J. 258 (1972). Thus, although it is apparently generally accepted that most users do not suffer any significant ongoing harm, at least some—perhaps predisposed to such episodes—are reported to suffer severe temporary trauma, as Dr. Tennant reported in this case. See Marihuana: A Signal of Misunderstanding, The Official Report of the National Commission on Marihuana and Drug Abuse 72 (Bantam ed. 1972); Bartimo, supra, at 344–45, 347–48. Moreover, the long-term physical and psychological effects are as yet unclear. Thus, in testifying before Judge Rayfiel, Dr. Grinspoon acknowledged that a recent article in a British medical journal had "asserted that marijuana led to brain damage." Although Dr. Grinspoon indicated that this "was not a credible article," he agreed that "the effect of marijuana regarding brain damage is not known." Similarly, the first report of the National Commission on Marihuana and Drug Abuse (the Shafer

5. The hearing and Dr. Grinspoon's testimony were also directed to appellants' alternative argument that the statutory classification of marihuana under 21 U.S. C. § 812 as a Schedule I drug is unreasonable. See Part III infra.

6. Three were identified as physicians associated with medical schools, one as a sociologist, and one as a professor of law. The last is Professor John Kaplan of Stanford Law School, author of Mari-

juana—The New Prohibition, which is cited in the text of this opinion.

7. The results of the most recent studies concerning the effect of marihuana on driving ability are briefly summarized in Drug Use in America: Problem in Perspective, Second Report of the National Commission on Marihuana and Drug Abuse 184–85 (1973). These studies appear to support Dr. Tennant's concern about this matter.

Commission), referred to above, upon which appellants heavily rely, stated:

> The Commission reemphasizes its concern about the small minority of heavy, long-term marihuana users who are exposed to a much greater relative risk of impaired general functioning in contemporary America. . . .
>
> . . . we must state that a significant increase in the at-risk population could convert what is now a minor public health concern in this country to one of major proportions.[8]

See J. Kaplan, supra, at 156, 180–183; Bartimo, supra, at 345–46.[9] It is true that the rationale for the criminalization of marihuana has shifted over time. See Bonnie & Whitebread, supra note 9, at 1012–16, 1055–57, 1061–62, 1071–74, 1126–27, 1162 (first explained, inter alia, by fear that drug would induce violent criminal conduct, insanity and even death, then by concern that it would serve as a stepping stone to harder drugs, and finally by apprehension as to its short- and long-term physical and psychological effects). This, however, does not negate the possibility that the justification now principally relied upon may have some merit.[10]

An argument might perhaps be made that in the absence of compelling justification, the police power does not extend so far as to permit the Government to protect an individual against himself and that the concern for public health and safety is relevant only insofar as the actions of one individual may threaten the well-being of others. See id. at 1149–55. While such an analysis would bring into question the prohibition against private possession and use of marihuana, see, e. g., People v. Sinclair, 387 Mich. 91, 131, 194 N.W.2d 878, 895–896 (1972) (opinion of Kavanagh, C. J.), that issue is not before us.[11] In any event, such an argument does not undermine the authority of the Government to prevent some from aiding or inducing others to commit acts detrimental to their own health. The first report of the Shafer Commission accepted this

8. Marihuana: A Signal of Misunderstanding, supra, at 113.

9. The absence of hard evidence of long-term ill effects is not necessarily a result of there not being any, but may simply reflect the practical obstacles to controlled scientific observation and measurement. See J. Kaplan, supra, at 156; Bonnie & Whitebread, The Forbidden Fruit and the Tree of Knowledge: An Inquiry into the Legal History of American Marijuana Prohibition, 56 Va.L.Rev. 971, 1102–04 (1970).

10. One observer has pointed out, in regard to the question of whether marihuana is safe enough to justify legalization:

How much scientific evidence should be required before a drug is considered harmless is an open question. Popular standards seem to vary with the drug being considered. Some people, who on the basis of scant evidence have satisfied themselves that marijuana is relatively harmless, demand that insecticides and other mundane chemicals be subjected to strict and prolonged examination before they can be legally marketed.

Schneyer, Book Review, 24 Stan.L.Rev. 200 n. 4 (1971).

11. The constitutionality of laws prohibiting the possession of marihuana for personal use has been the subject of a number of recent judicial opinions. See, e. g., United States v. Drotar, 416 F.2d 914 (5th Cir. 1969), vacated on other grounds, 402 U.S. 939, 91 S.Ct. 1628, 29 L.Ed.2d 107 (1971); Commonwealth v. Leis, 355 Mass. 189, 243 N.E.2d 898 (1969) (both upholding such laws); People v. Sinclair, supra (law held invalid, though no consensus as to grounds; opinions suggest, inter alia, cruel and unusual punishment, irrational classification and invasion of personal liberty); State v. Kantner, 53 Haw. 327, 493 P.2d 306, cert. denied, 409 U.S. 948, 93 S.Ct. 287, 34 L.Ed.2d 218 (1972) (law upheld, but dictum in concurring opinion that "right to the 'enjoyment of life, liberty and the pursuit of happiness' includes smoking of marijuana," id. at 312; dissenting opinions assert criminalization violates due process and right of privacy). We intimate no view as to whether an argument of unconstitutionality advanced by a defendant charged with private possession would require stricter scrutiny than here applied or yield a different result. For a thoughtful discussion of this issue, see Bonnie & Whitebread, supra note 9, at 1125–55. See also Drug Use in America: Problem in Perspective, supra note 7, at 247–49.

very distinction. That report referred to the 1970 statute involved here and recommended that neither possession of marihuana for personal use nor casual distribution of small amounts of marihuana not for profit be an offense, although marihuana possessed in public would remain contraband subject to summary seizure and forfeiture. But the report made absolutely clear that these were the *"only . . . changes in federal law"* recommended. See Marihuana: A Signal of Misunderstanding, supra, at 191. This dual approach to the control of marihuana has since been reaffirmed by the Shafer Commission in its second and final report, Drug Use in America: Problem in Perspective, supra note 7, at 224–25. See also J. Kaplan, supra, at 315–30.[12]

■ Appellants also argue that marihuana is much less harmful than tobacco and alcohol; the legal availability of the latter substances, they say, proves the irrationality of singling out marihuana for criminal penalties. Our knowledge is not sufficient for us to accept or reject appellants' initial premise. But even if it is correct, see J. Kaplan, supra, at 263–310 (as to alcohol), this does not render the statute here unconstitutional. If Congress decides to regulate or prohibit some harmful substances, it is not thereby constitutionally compelled to regulate or prohibit all. It may conclude that half a loaf is better than none. See McDonald v. Board of Election Commissioners, 394 U.S. 802, 809–811, 89 S.Ct. 1404, 22 L.Ed.2d 739

(1969); Williamson v. Lee Optical, Inc., supra, 348 U.S. at 489, 75 S.Ct. 461.

■ In sum, although one cannot read the thorough first report of the Shafer Commission without agreeing that there is an "extensive degree of misinformation about marihuana as a drug" and a need, in the words of the report, to "demythologize" and to "desymbolize" it,[13] the question before us is a narrow one. It is whether it can fairly be said that Congress acted irrationally in prohibiting the commercial distribution of marihuana. We believe that the answer to that question is no. Therefore, appellants' constitutional attack upon that portion of the statute must fail. Accord, United States v. Rodriquez-Camacho, 468 F.2d 1220 (9th Cir. 1972).

### III

Appellants' second argument is that the statutory assignment of marihuana to Schedule I, together with such concededly dangerous narcotic drugs as heroin, is arbitrary and unreasonable in light of the criteria for classification established by the statute and what is known about the effects of these substances.

As already noted, the Act established a series of five schedules and listed a number of criteria based upon which the various controlled substances were each assigned by Congress to one of the schedules. See 21 U.S.C. § 812. The criteria concern potential for abuse, currently accepted medical uses, and possible physical or psychological dependency effects.[14] The severity of the statutory

---

12. For approval of the distinction proposed by the Shafer Commission between continued prohibition of commercial distribution and legalization of possession for personal use, see Buckley, The Spirit of the Law, XXIV National Review 1348 (1972). It is noteworthy that the Act itself distinguishes between commercial possession or distribution of marihuana on the one hand and possession for personal use or gratuitous transfers of small amounts on the other. Persons who are convicted of possession without intent to distribute or of distribution of a small amount without remuneration are subject

to a prison term of up to one year and a maximum fine of $5,000. 21 U.S.C. §§ 841(b)(4), 844(a). In contrast, commercial possession and distribution are punishable by imprisonment for as much as five years and a maximum fine of $15,000. 21 U.S.C. § 841(b)(1)(B).

13. Marihuana: A Signal of Misunderstanding, supra, at 210.

14. Thus, for example, the criteria for Schedule I are:
(A) The drug or other substance has a high potential for abuse.

sanctions for drug distribution and related offenses is regulated by the schedule in which the drug in question is found, with the most severe penalties attaching to Schedule I and II drugs and the least severe to those in Schedule V. 21 U.S.C. § 841(b).

Appellants attack their sentences as the product of an irrational system of drug classification. They assert that the statutory penalties are not justified because scientific evidence shows that marihuana is not nearly as dangerous as heroin, and they suggest that marihuana should be classified, if anywhere, in Schedule V.[15]

Congress listed marihuana in Schedule I principally on the recommendation of HEW, which urged "that marijuana be retained within Schedule I at least until the completion of certain studies now underway to" determine the physical and psychological dependency effects of the drug. See H.R. Report, supra note 3, at 4579, 4629–30. Apparently the potential for abuse and the absence of significant medical value were the determining grounds for placement of marihuana in the first schedule. See 116 Cong.Rec. 797 (daily ed. Jan. 28, 1970) (remarks of Sen. Hruska). Although we are in no position at this time and on this record to determine whether marihuana would be listed most appropriately where it is or in some other category, we can conclude that the current statutory arrangement is not so unreasonable or arbitrary as to endanger the validity of the sentences imposed on appellants.[16]

The reasonableness of the provisions in question is grounded on two considerations. As indicated in Part II of this opinion, there is a body of scientific opinion that marihuana is subject to serious abuse in some cases, and relatively little is known about its long-term effects. Congress was advised by HEW that determination of the seriousness of these potential hazards would require further study, and in the meantime Congress was certainly not precluded from taking a cautious approach. It is apparently true that there is little or no basis for concluding that marihuana is as dangerous a substance as some of the other drugs included in Schedule I. But the focus of appellants' attack is on the penalty provisions accompanying the schedule, and in this respect Congress has made a significant distinction. The penalties for possession of a Schedule I substance with intent to distribute differ substantially depending upon whether the substance in question is classified as a narcotic drug. Marihuana is not so classified. See 21 U.S.C. §§ 802(16), 812(c), Schedule I(c)(10). Consequently, the maximum penalty for possession of it with the requisite intent is five years in prison and a $15,000 fine, compared with a possible 15-year sentence and $25,000 fine for similar possession of such Schedule I and II drugs as heroin and cocaine. See 21 U.S.C. §§ 841(b)(1) (A), (B).

■ In view of these disparities in the statutory sanctions and the ongoing dispute regarding the potential effects of marihuana, we cannot say that its

---

(B)· The drug or other substance has no currently accepted medical use in treatment in the United States.
(C) There is a lack of accepted safety for use of the drug or other substance under medical supervision.
21 U.S.C. § 812(b)(1).

15. Thus, appellants argue that marihuana is less harmful than barbiturates, which are listed in Schedule IV. See, e. g., People v. McCabe, 49 Ill.2d 338, 344, 275 N.E.2d 407, 411 (1971) (per curiam). This reasoning may be persuasive, but it is not undisputed. See "Marijuana and Society," statement by the Council on

Mental Health and the Committee on Alcoholism and Drug Dependence of the American Medical Association, quoted in J. Kaplan, supra, at 187 (cannabis found to be more potent than the barbiturates).

16. Appellants do not suggest that their sentences violate the constitutional guarantee against cruel and unusual punishment. See, e. g., United States v. Lozaw, 427 F.2d 911, 917 (2d Cir. 1970). But cf. People v. Sinclair, supra, 387 Mich. at 131, 148, 194 N.W.2d at 895, 904–906 (opinions of Kavanagh, C. J., & Brennan, J.).

placement in Schedule I is so arbitrary or unreasonable as to render it unconstitutional. Moreover, a final observation is appropriate. The provisions of the Act allowing periodic review of the control and classification of allegedly dangerous substances create a sensible mechanism for dealing with a field in which factual claims are conflicting and the state of scientific knowledge is still growing. The question whether a substance belongs in one schedule rather than another clearly calls for fine distinctions, but the statutory procedure at least offers the means for producing a thorough factual record upon which to base an informed judgment. True, the position taken thus far by the Attorney General's designate (the propriety of which is now being litigated), see Part I supra, has halted this procedure at the outset for marihuana. But the very existence of the statutory scheme indicates that, in dealing with this aspect of the "drug" problem, Congress intended flexibility and receptivity to the latest scientific information to be the hallmarks of its approach. This, while not necessary to the decision here, is the very antithesis of the irrationality appellants attribute to Congress.

Judgments of conviction affirmed.