18-859-cv
*Washington et al. v. Barr et al.*

# UNITED STATES COURT OF APPEALS

# FOR THE SECOND CIRCUIT

August Term, 2018

(Argued: December 12, 2018    Decided: May 29, 2019)

Docket No. 18-859-cv

─────────────────

MARVIN WASHINGTON, DEAN BORTELL as Parent of Infant ALEXIS BORTELL, JOSE BELEN, SEBASTIEN COTTE as Parent of Infant JAGGER COTTE, and CANNABIS CULTURAL ASSOCIATION, Inc.

*Plaintiffs-Appellants*,

– v. –

WILLIAM PELHAM BARR in his official capacity as United States Attorney General, UNITED STATES DEPARTMENT OF JUSTICE, UTTAM DHILLON in his official capacity as the Acting Administrator of the Drug Enforcement Administration, UNITED STATES DRUG ENFORCEMENT ADMINISTRATION, and UNITED STATES OF AMERICA, *Defendants-Appellees*,[1]

─────────────────

Before: JACOBS and CALABRESI, *Circuit Judges*, and RAKOFF, *District Judge*.[2]

---

[1] The Clerk of Court is respectfully requested to amend the official caption as set forth above.

[2] Judge Jed S. Rakoff, of the United States District Court for the Southern District of New York, sitting by designation.

Appeal from the judgment of the United States District Court for the Southern District of New York (Hellerstein, *J.*) dismissing, with prejudice, Plaintiffs' complaint for failure to exhaust administrative remedies and, in the alternative, failure to state a claim. Plaintiffs challenged the inclusion of marijuana on Schedule I of the federal Controlled Substances Act, 21 U.S.C. § 801 *et seq*. But Plaintiffs did not first pursue reclassification through the administrative process defined in the Act. Accordingly, their action is premature. We agree with the District Court's ruling that, since Plaintiffs failed to exhaust their administrative remedies, we should not hear their suit at this time. In view of the unusual circumstances of this case, however, we retain jurisdiction in this panel for the sole purpose of promoting speedy administrative review.

Judge JACOBS dissents in a separate opinion.

---

Michael S. Hiller, Hiller PC (Lauren A. Rudick, Fatima V. Afia, and Jason E. Zakai, Hiller PC; Joseph A. Bondy, *on the brief*), New York, NY, *for Plaintiffs-Appellants*.

Samuel Dolinger, Assistant United States Attorney (Benjamin H. Torrance, Assistant United States Attorney, *on the brief*), for Geoffrey S. Berman, United States Attorney for the Southern District of New York, New York, NY, *for Defendants-Appellees*.

---

GUIDO CALABRESI, *Circuit Judge*:

This is the latest in a series of cases that stretch back decades and which have long sought to strike down the federal government's classification of marijuana as a Schedule I drug under the Controlled Substances Act (CSA), 21

U.S.C. § 801 *et seq.*  *See, e.g., Krumm v. Drug Enforcement Admin.*, 739 F. App'x 655 (D.C. Cir. 2018) (mem.); *Ams. for Safe Access v. Drug Enforcement Admin.*, 706 F.3d 438 (D.C. Cir. 2013); *Alliance for Cannabis Therapeutics v. Drug Enforcement Admin.*, 15 F.3d 1131 (D.C. Cir. 1994) (mem.).  The current case is, however, unusual in one significant respect: among the Plaintiffs are individuals who plausibly allege that the current scheduling of marijuana poses a serious, life-or-death threat to their health.  We agree with the District Court that Plaintiffs should attempt to exhaust their administrative remedies before seeking relief from us, but we are troubled by the Drug Enforcement Administration (DEA)'s history of dilatory proceedings.  Accordingly, while we concur with the District Court's ruling, we do not dismiss the case, but rather hold it in abeyance and retain jurisdiction in this panel to take whatever action might become appropriate if the DEA does not act with adequate dispatch.

## STANDARD OF REVIEW

The trial court granted Defendants' motion under Federal Rules of Civil Procedure 12(b)(1) and (6) to dismiss Plaintiffs' case.  We therefore review its decision *de novo*, accepting as true all of the complaint's well-pleaded facts.  *See*

*d'Amico Dry Ltd. v. Primera Maritime (Hellas) Ltd.*, 886 F.3d 216, 222 (2d Cir. 2018);

*Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009).

## BACKGROUND

### A. Parties

As this case reaches us at the motion to dismiss stage, we must treat the well-pleaded facts alleged in Plaintiffs' complaint as true. According to their pleadings, Plaintiffs are several individuals and a membership organization with an interest in the regulation of marijuana. They assert that the classification of cannabis as a Schedule I substance under the CSA harms them in one or more ways.

Marvin Washington is an African-American businessman working in the medical marijuana space. He would like to expand his business into whole-plant cannabis products and take advantage of the federal Minority Business Enterprise Program, but, he alleges, he is impeded from so doing by the drug's scheduling.

Alexis Bortell and Jagger Cotte are children with dreadful medical problems. Bortell suffers from chronic and intractable seizures; Cotte from Leigh's disease. They allege that they exhausted traditional treatment options

before finding success medicating with cannabis. They claim that marijuana has saved their lives. Because of its Schedule I classification, however, they cannot bring their life-saving medicine with them when they travel onto federal lands or into states where marijuana is illegal. For Bortell, these travel limitations also mean that she cannot take full advantage of the veteran's benefits to which she is entitled through her father. In addition, both Bortell and Cotte live in constant fear that their parents might be subject to arrest and prosecution for their involvement in their children's medical treatment.

Jose Belen is a veteran of the war in Iraq and suffers from post-traumatic stress disorder. After his honorable discharge, he became suicidal and was adjudged 70% disabled. He alleges that he pursued conventional therapies unsuccessfully. In despair, he turned to medical marijuana. This, he claims, has allowed him to manage his symptoms. He further asserts, like Bortell, that marijuana's Schedule I classification restricts his ability to travel and to take full advantage of his veteran's benefits.

The Cannabis Cultural Association, Inc. (CCA) is a not-for-profit organization dedicated to assisting people of color develop a presence in the cannabis industry. CCA is particularly focused on the way past convictions for

possession, cultivation, distribution, and use of marijuana have disproportionately affected people of color and prevented minorities from participating in the new state-legal marijuana industry.

Defendants are the United States, the Attorney General, the Department of Justice, the Acting Administrator of the DEA, and the DEA itself. They are responsible for implementing the CSA and, more particularly, for updating the classification of controlled substances. *See* 21 U.S.C. § 811(a); 28 C.F.R. § 0.100(b).

## B. Proceedings below

Plaintiffs initiated the instant suit in the Southern District of New York in July 2017 and filed the amended complaint now at issue on September 6, 2017. Plaintiffs raised numerous arguments for re- or descheduling marijuana, including, as relevant to this appeal, (a) that the classification of marijuana as a Schedule I drug exceeded Congress's powers under the Commerce Clause and was without a rational basis, (b) that the classification was arbitrary and capricious, (c) that marijuana's inclusion in the CSA was racially animated and is an act of viewpoint discrimination, and (d) that the law, as applied to Plaintiffs, violates variously their (or, in CCA's case, its members') First, Fifth, and Ninth

Amendment rights, including, *inter alia*, substantive due process and the fundamental right to travel.

The crux of Plaintiffs' case is that new facts related to the acceptance of medical marijuana treatment regimens and the federal government's own involvement in medical marijuana research require a reexamination of marijuana's scheduling under the CSA. The complaint seeks declaratory relief, as well as an injunction restraining Defendants from enforcing the CSA with respect to cannabis. In reply, Defendants moved to dismiss.

After argument, the District Court granted the government's motion and dismissed Plaintiffs' suit. It further held that amending the complaint would be futile. As a threshold matter, the Court determined that Plaintiffs had failed to exhaust their administrative remedies and that they did not qualify for an exception to the exhaustion rule. On the merits, the Court did not find Plaintiffs' arguments persuasive and deemed their claims to be either foreclosed by precedent or without legal authority. The Court additionally held that CCA failed to establish that it had standing to pursue its claim, since the relief it sought would not redress the injury its members had allegedly suffered. The

District Court entered judgment on February 26, 2018, and this appeal timely followed.

## DISCUSSION

We resolve this case without reaching most of Plaintiffs' disparate arguments. As the District Court correctly observed, Plaintiffs challenge the current classification of marijuana as a Schedule I substance under the CSA but did not first bring this challenge to the agency that has the authority to reschedule marijuana, the DEA.[3] Although the CSA does not expressly mandate the exhaustion of administrative remedies, our precedents indicate that it is generally to be required as a prudential rule of judicial administration. We agree with the District Court that exhaustion was appropriate here. But in light of the allegedly precarious situation of several of the Plaintiffs, which at this stage of

---

[3] The CSA places in the Attorney General the power to schedule, reschedule, or deschedule drugs. *See* 21 U.S.C. § 811(a). The Attorney General has promulgated rules delegating this power to the head of the DEA. *See* 28 C.F.R. § 0.100(b). The CSA further requires that, before scheduling, rescheduling, or descheduling a drug, the Attorney General "shall . . . request from the Secretary [of Health and Human Services] a scientific and medical evaluation[ of the drug], and [the Secretary's] recommendations, as to whether such drug or other substance should be so controlled or removed," which "shall be binding on the Attorney General as to such scientific and medical matters." 21 U.S.C. § 811(b). The process for reviewing a drug's scheduling can be initiated by the Attorney General, the Secretary of Health and Human Services, or "on the petition of any interested party." *Id.* § 811(a).

the proceedings we must accept as true, and their argument that the administrative process may not move quickly enough to afford them adequate relief, we retain jurisdiction of the case in this panel, for the sole purpose of taking whatever action might become appropriate should the DEA not act with adequate dispatch. We wish to make clear, however, that, in doing so, we express no view whatever on the merits of Plaintiffs' case—that is, on whether marijuana should be listed or not.

### A. Exhaustion of administrative remedies is appropriate here.

The administrative state is a topic of much debate these days. *See* Gillian E. Metzger, *The Supreme Court, 2016 Term—Foreword: 1930s Redux: The Administrative State Under Siege*, 131 HARV. L. REV. 1 (2017). Distinguished jurists and scholars have been critical of its expansion. *See, e.g., Gutierrez-Brizuela v. Lynch*, 834 F.3d 1142, 1149 (10th Cir. 2016) (Gorsuch, *J.*, concurring); Philip Hamburger, *Is Administrative Law Unlawful?* (2014). Others understand it as a central part of our modern republic. *See generally* Stephen Skowronek, *Building a New American State: The Expansion of National Administrative Capacities, 1877-1920* (1982); *see also* Jerry L. Mashaw, *Creating the Administrative Constitution: The Lost One Hundred Years of American Administrative Law* (2012) (tracing the roots of the

administrative state back to the Founding).  Regardless of one's point of view, it remains at the moment a key part of our legal regime.  The doctrines that regulate the relationship between courts and administrative agencies are thus of particular importance.  They attempt to reconcile the advantages of expertise, flexibility, and efficiency with the safeguards of government under law.  *See* Daniel R. Ernst, *Tocqueville's Nightmare: The Administrative State Emerges in America, 1900-1940* (2014).

Exhaustion of administrative remedies is one such doctrine.  It holds that federal courts should refrain from adjudicating a controversy if the party bringing suit might obtain adequate relief through a proceeding before an administrative agency.  *See Woodford v. Ngo*, 548 U.S. 81, 88-89 (2006) ("[N]o one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted.") (internal quotation marks and citations omitted).  The duty to exhaust administrative remedies can spring from legislation or from judicial decision.  "Where Congress specifically mandates [it], exhaustion is required."  *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992), *superseded by statute on other grounds as recognized in Porter v. Nussle*, 534 U.S. 516 (2002).  "But [even] where Congress has not clearly required

exhaustion," a court may still impose it as an act of "sound judicial discretion."

*Id.*

Before requiring exhaustion as a "rule of judicial administration," *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 50 (1938), a court should, however, look to "legislative purpose, which is of paramount importance." *Patsy v. Bd. of Regents of State of Fla.*, 457 U.S. 496, 501 (1982). Simply put, "a court should not defer the exercise of jurisdiction under a federal statute unless it is consistent with [congressional] intent." *Id.* at 501-02; *see also id.* at 502 n.4 ("Even where the statutory requirement of exhaustion is not explicit, courts are guided by congressional intent in determining whether application of the doctrine would be consistent with the statutory scheme.").

Although the CSA does not mandate exhaustion of administrative remedies, we agree with the court below that exhaustion here is consistent with congressional intent and is therefore appropriate. This judgment flows from our analysis of the text and structure of the Act.

The text of the CSA shows that Congress sought to favor administrative decisionmaking. In several places, the words of the statute either presume or create an administrative process to review the classification of drugs under the

Act's schedules. Thus, 21 U.S.C. § 811(a) instructs the Attorney General to schedule, reschedule, or deschedule drugs under the Act by rules "made on the record after opportunity for a hearing pursuant to the rulemaking procedures prescribed" by the Administrative Procedure Act, 5 U.S.C. § 551 *et seq*. Similarly, 21 U.S.C. § 811(b) details the procedures the Attorney General should follow when scheduling, rescheduling, or descheduling drugs, including a duty to defer to the Secretary of Health and Human Services on certain medical and scientific matters. And § 811(c) lists several factors the Attorney General must consider before initiating classification. *See generally Ams. for Safe Access*, 706 F.3d at 439-41.

These provisions, among others, establish that Congress intended to implement scheduling decisions under the CSA through an administrative process. Requiring would-be plaintiffs to exhaust that process before turning to the courts is consonant with that intent. Were plaintiffs able to go directly to federal court to pursue reclassification, the language Congress devised to erect an administrative review process would be rendered a nullity. It follows that construing the Act to allow such behavior as a matter of course would violate a

basic canon of statutory interpretation: that, if possible, every provision of a statute must be given effect. *See, e.g.*, *Williams v. Taylor*, 529 U.S. 362, 404 (2000).

The structure of the Act reinforces the language used and hence our conclusion that Congress wanted aggrieved parties to pursue reclassification through agencies, and not, in the first instance, through the federal courts. The CSA relies on an administrative process to operate effectively. When Congress enacted the CSA, it put, by legislative fiat, certain drugs directly into schedules. *See* Controlled Substances Act, Pub. L. No. 91-513, § 202, 84 Stat. 1236, 1247-52 (1970) (codified at 21 U.S.C. § 812); *see also Gonzales v. Raich*, 545 U.S. 1, 14 (2005). But the statute contemplated that these initial lists would be regularly revised and updated by the Attorney General, in consultation with the Secretary of Health and Human Services, and that this would be done according to a specific procedure and set of standards. *See* 21 U.S.C. §§ 811(a)-(c). The Act thus incorporates an administrative process into its structure. Indeed, its logic and design depend on administration and agency actions to realize its aims. Not to require exhaustion in the ordinary case would therefore undermine the text and structure of the CSA.

In addition, requiring exhaustion is eminently sensible here. The Supreme Court has told us that exhaustion furthers two important goals. First, it "protect[s] administrative agency authority." *McCarthy*, 503 U.S. at 145. By "defer[ing] to Congress' delegation . . . to coordinate branches of Government," exhaustion recognizes "that agencies . . . have primary responsibility for the programs that Congress has charged them to administer." *Id*. Second, exhaustion "promotes judicial efficiency" by giving an administrative agency a chance to resolve a dispute, thus either rendering controversies moot or "produc[ing] a useful record for subsequent judicial consideration." *Id*.

Both purposes are advanced by requiring exhaustion in the instant case. The Supreme Court has recognized that protecting agency authority is a particularly compelling aim where "the agency proceedings in question allow the agency to apply its special expertise." *Id.* (citing *McKart v. United States*, 395 U.S. 185, 194 (1969)). That is the situation in the case before us now. At its root, the question raised by Plaintiffs' suit is whether developments in medical research and government practice should lead to the reclassification of marijuana. This is precisely the kind of question that calls for the application of special knowledge. Exhaustion here "protect[s] administrative agency

authority" by leaving this decision in the first instance to the specialists at the DEA and the Department of Health and Human Services. *Id.*

Administrative exhaustion will also promote judicial efficiency in the ways identified by the Supreme Court. It is conceivable that, in response to a petition from Plaintiffs along the lines advanced before us now, the DEA would reschedule marijuana, rendering the current case moot. And if the DEA did not, the administrative process would generate a comprehensive record that would aid in eventual judicial review. The Supreme Court has observed that the creation of such a record can be "especially" beneficial "in a complex or technical factual context," *id.*, which is the context involved in the case at bar. *Accord Shenandoah v. U.S. Dep't of Interior*, 159 F.3d 708, 713 (2d Cir. 1998); *City of New York v. Heckler*, 742 F.2d 729, 737 (2d Cir. 1984).

Moreover, we think that the kinds of arguments Plaintiffs advance make this case well suited to administrative evaluation and inappropriate for federal court determination in the first instance. Plaintiffs do not contend that a decisive event or singular discovery has rendered the previous classification of marijuana under the CSA indefensible. Rather, Plaintiffs claim that a shift over time in our understanding of the uses and dangers of marijuana warrants a change in

marijuana's classification. This argument raises a complex policy question: whether the extant regulatory regime continues to advance the CSA's goals in light of the current state of our knowledge about the drug. It is possible that the current law, though rational once, is now heading towards irrationality; it may even conceivably be that it has gotten there already. Courts are not especially good at dealing with situations of this sort by themselves. In such circumstances, dialogue between courts and other law-defining institutions, like agencies, often works best. *See United States v. Then*, 56 F.3d 464, 468-69 (2d Cir. 1995) (Calabresi, *J.*, concurring).

A sensible response to our evolving understanding about the effects of marijuana might require creating new policies just as much as changing old ones. This kind of constructive governmental work, mixing adjudication and program-design, creating policy through the balancing of competing legitimate interests, is not generally best accomplished by federal courts on their own; it is, however, the stock-in-trade of administration. *See, e.g.*, James M. Landis, *The Administrative Process* (1938). Assuming, of course, that one can get the administrative agency to act.

For the foregoing reasons, requiring exhaustion is appropriate in the instant case. Although not mandated by Congress, it is consistent with congressional intent, as manifested in the CSA's text and structure. And it advances the goals that the Supreme Court has announced the doctrine serves. The District Court's decision to require exhaustion here was therefore correct.

**B. None of the recognized exceptions to the doctrine govern this case at this time.**

Even where exhaustion is seemingly mandated by statute or decisional law, the requirement is not absolute. The Supreme Court itself has recognized exceptions to the exhaustion requirement under "three broad sets of circumstances." *McCarthy*, 503 U.S. at 146.

First, exhaustion may be unnecessary where it would be futile, either because agency decisionmakers are biased or because the agency has already determined the issue. *Id.* at 148. It does not appear, however, that this futility exception currently applies here. Plaintiffs cite to various public statements by former Attorney General Jefferson Beauregard Sessions III and former Acting Administrator of the DEA Charles Philip Rosenberg to suggest that the administrative process would be biased against them. But Plaintiffs' evidence, even if given the interpretation they suggest, does not qualify them for the

exception, since the public statements relied on do not implicate the relevant decisionmaker. Neither Sessions nor Rosenberg remains part of the review process. Nor, indeed, would they have been the relevant decisionmakers at the time Plaintiffs initiated their suit. On the medical and scientific claims central to Plaintiffs' argument, it is the opinion of the Secretary of Health and Human Services that matters, not the judgment of the Attorney General or the head of the DEA. *See* 21 U.S.C. § 811(b) (stating that "[t]he recommendations of the Secretary to the Attorney General shall be binding on the Attorney General as to [the] scientific and medical" evaluation of substances considered for scheduling). Plaintiffs make no plausible allegations of bias on the part of the Secretary. Futility on account of bias has, therefore, not been adequately alleged.

The Supreme Court has further stated that exhaustion may be unnecessary where the administrative process would be incapable of granting adequate relief. *See McCarthy*, 503 U.S. at 147. That second exception, too, is inapposite at the moment. Although Plaintiffs style their claims in many different ways, the gravamen of their argument is that marijuana should not be classified as a Schedule I substance under the CSA. Were a court to agree, the remedy would be to re- or deschedule cannabis. It cannot be seriously argued that this remedy

is not available through the administrative process. It is precisely the remedy provided under 21 U.S.C. § 801 *et seq.* Plaintiffs are therefore not currently entitled to bypass exhaustion under this second exception either.

Finally, exhaustion may be unnecessary where pursuing agency review would subject plaintiffs to undue prejudice. *McCarthy*, 503 U.S. at 146-47. In particular, "an unreasonable or indefinite timeframe for administrative action" may sufficiently prejudice plaintiffs to justify a federal court in taking a case prior to the complete exhaustion of administrative remedies. *Id.* at 147. Not every delay will be sufficiently severe to justify waiver, however. Although, in most cases, "respondents would clearly prefer an immediate appeal . . . rather than the often lengthy administrative review process," a mere preference for speedy resolution is not enough. *Heckler v. Ringer*, 466 U.S. 602, 619 (1984). "[T]hreatened or impending irreparable injury flowing from delay incident to following the prescribed [administrative] procedure" militates in favor of waiving exhaustion, but only if there is a "strong showing . . . both [of] the inadequacy of the prescribed procedure and of impending harm." *Aircraft & Diesel Equip. Corp. v. Hirsch*, 331 U.S. 752, 773-74 (1947).

Despite the apparently dire situation of some of the Plaintiffs, they do not yet meet the requirement for this exception to the exhaustion requirement. In point of fact, the existing classificatory scheme has not prevented Plaintiffs Bortell, Cotte, or Belen from obtaining their allegedly life-saving medication. Nor have Plaintiffs otherwise explained how pursuing agency review would subject them to an additional "irreparable injury flowing from delay incident" to the administrative process itself. *Id.* at 773. Accordingly, despite their concededly difficult position, Plaintiffs are not currently entitled to bypass agency review.

## C. *United States v. Kiffer* does not require that we waive exhaustion here at the moment.

The exhaustion requirement under the CSA is, however, prudential, not jurisdictional. It is not mandated by the statute. Rather, it is a judicially-created administrative rule, applied by courts in their discretion.

This explains why this Court has, on at least one previous occasion, considered a challenge to the scheduling of marijuana under the CSA without requiring exhaustion, in *United States v. Kiffer*, 477 F.2d 349 (2d Cir. 1973). That case is readily distinguishable, however, and its holding does not mean that exhaustion should not be required in the current case at this time. The *Kiffer*

Court began by observing that "timely and successful use of th[e] administrative [process] would have obtained for [the] appellants [in that case] the very relief they seek from us—a declaration either that mari[j]uana should not be subject to the [CSA] or that it should be covered only in another schedule." *Id.* at 351. The Court began, then, with the assumption that exhaustion did apply. It waived the normal requirement only because of two factors that do not obtain in the instant case: first, because the "application of the . . . doctrine [of exhaustion] to criminal cases is generally not favored," *id.* at 352, and, second and more significantly, because, at the time *Kiffer* was heard, the federal government had taken the position that it did not have the power to re- or deschedule marijuana at all, as a result of foreign treaty commitments, *id.* at 351. Under those circumstances, where "there [wa]s some doubt whether appellants in fact [had] an administrative remedy," the Court declined to require exhaustion. *Id.* The instant case is different. It is, of course, civil. And, as the D.C. Circuit has since held, foreign treaty commitments have not divested the Attorney General of the power to re- or deschedule marijuana. *See Nat'l Org. for Reform of Marijuana Law (NORML) v. Drug Enforcement Admin.*, 559 F.2d 735 (D.C. Cir. 1977). *Kiffer*'s result is therefore not controlling. In fact, the case's logic reinforces our

conclusion that Plaintiffs should attempt to exhaust their administrative remedies before seeking relief from us. But *Kiffer* also makes clear that, when appropriate, we do have the power to act even if the administrative agency has not.

D. **Strong interests compel this Court to retain jurisdiction.**

This case reaches us as an appeal from a ruling on a motion to dismiss. Under settled principles of adjudication, we must, therefore, accept the well-pleaded facts in the complaint as true. Taking the facts as alleged, and, accordingly, taking the supposed benefits some Plaintiffs have experienced from marijuana as true as well, we—like the District Court below—are struck by the transformative effects this drug has assertedly had on some Plaintiffs' lives. As a result, we are troubled by the uncertainty under which Plaintiffs must currently live. Plaintiffs claim that marijuana has extended their lives, cured seizures, and made pain manageable. If true, these are no small things. Plaintiffs should not be required to live indefinitely with uncertainty about their access to allegedly life-saving medication or live in fear that pursuing such medical treatment may subject them or their loved ones to devastating consequences.

Plaintiffs argue that the administrative process will prolong their ordeal intolerably. And their argument is not without force. Plaintiffs document that the average delay in deciding petitions to reclassify drugs under the CSA is approximately nine years. Such long delays cast doubt on the appropriateness of requiring exhaustion. *Accord Gibson v. Berryhill*, 411 U.S. 564, 575 n.14 (1973). And where, as here, health is involved, delay can be even more problematic. *See Abbey v. Sullivan*, 978 F.2d 37, 46 (2d Cir. 1992) (observing that, "if the delay attending exhaustion would subject claimants to deteriorating health . . . then waiver [of exhaustion] may be appropriate").

Indeed, on the alleged facts, which, we repeat, we must for now take as true, undue delay by the agency might make applicable each of the three exceptions to exhaustion that the Supreme Court has recognized and which we discussed earlier. Specifically, undue delay, if it in fact results in catastrophic health consequences, could make exhaustion futile. Moreover, the relief the agency might provide could, because of undue delay, become inadequate. And finally, and obviously, Plaintiffs could be unduly prejudiced by such delay.

To be clear, Plaintiffs have not alleged that they will necessarily suffer sufficient harm as a result of the time it would take to pursue the administrative

process to justify an exception to exhaustion now. Plaintiffs do, however, plausibly raise the specter of delay and plausibly suggest that the delay could become problematic. And although agencies, like legislatures, are often the best decisionmakers, this is so only when they actually do decide.

Courts have, moreover, on occasion deemed it proper to encourage prompt decisionmaking. Thus, where agencies have a history of dilatory proceedings, federal courts have sometimes retained jurisdiction of related cases to facilitate swift review. In *Telecommunications Research and Action Center v. F.C.C.*, 750 F.2d 70 (D.C. Cir. 1984), our sister circuit retained jurisdiction of a case in part because of the failure of a federal agency to act with adequate speed. *See* 750 F.2d at 80-81. "Whether or not the[] [agency's] delays would justify mandamus," the court stated, they were significant enough that it should retain jurisdiction to promote a quick resolution. *Id*. at 81; *see also, e.g.*, *In re Pesticide Action Network N. Am.*, 532 F. App'x 649, 652 (9th Cir. 2013) (summary order) (observing that "it is well established that we may retain jurisdiction over [a case]

to ensure that [the agency] acts expediently"); *cf. Then*, 56 F.3d at 468-69 (2d Cir. 1995) (Calabresi, *J.*, concurring).[4]

We think it possible that future action by us may become appropriate here. Plaintiffs have not asked for—and we do not even consider issuing—a writ of mandamus to force the DEA to act. But we exercise our discretion to keep jurisdiction of the case in this panel, to take whatever action may become appropriate if Plaintiffs seek administrative review and the DEA fails to act promptly. And we note that, under the unusual health-related circumstances of this case, what has counted as appropriate speed in the past may not count as appropriate speed here.

In doing this, we specify that we are not retaining jurisdiction to review the actions the agency may take. Jurisdiction over those may well lie solely in another circuit. Nor do we intend to retain jurisdiction indefinitely. Unless the Plaintiffs seek agency review and so inform us within six months, we will affirm the District Court's judgment dismissing this case. (And if only some Plaintiffs

---

[4] Some courts in other jurisdictions have gone even further in asserting a role for courts to ensure prompt action by lawmakers. *See Vincent v. Pabst Brewing Co.*, 177 N.W.2d 513, 517 (Wis. 1970); Corte Cost., 24 ottobre 2018, n. 207 (It.); *see generally* Guido Calabresi, *A Common Law for the Age of Statutes* (1982), especially *id.* at 35-37. We wish to make clear that we make no such assertion of power in the federal courts generally.

seek agency review, we will dismiss the complaint as to those who do not.)  But if Plaintiffs do seek agency review, and the agency fails to act with alacrity, Plaintiffs may return directly to us, under our retained jurisdiction.[5]

To be clear, we repeat that this case remains in our purview only to the extent that the agency does not respond to Plaintiffs with adequate, if deliberate, speed.  In other words, we retain jurisdiction exclusively for the purpose of inducing the agency to act promptly.

**CONCLUSION**

Because Plaintiffs failed to exhaust their administrative remedies and do not at this time qualify for an exception to the exhaustion doctrine, the District Court did not err in requiring Plaintiffs to bring their claims to the relevant agency first.  But, in light of the unusual circumstances of this case, we hold the case in abeyance and retain jurisdiction in this panel to take whatever further

---

[5] Because Plaintiffs' allegations with respect to the catastrophic harm they are facing are not implausible, we must take them as true at this stage of the litigation.  Should the agency fail to act, we would, before proceeding further, however, have to look into the allegations more deeply.  Accordingly, should the case return to us, it may be appropriate to remand to the District Court for further factfinding.  At that time, if Plaintiffs have not at least raised a disputed issue of material fact as to the veracity of their allegations, summary judgment against them would be appropriate.

action might become appropriate should Plaintiffs initiate administrative review

and the administrative process fail to operate with adequate dispatch.

DENNIS JACOBS, *Circuit Judge*, dissenting:

The plaintiffs seek a declaration that the classification of marijuana as a Schedule 1 substance is unconstitutional because it does not reflect contemporary learning regarding the drug's medicinal uses. I agree with the District Court that this case must be dismissed for failure to exhaust administrative remedies in the Drug Enforcement Agency ("DEA"). The majority opinion does not actually disagree, though it seems to treat lack of jurisdiction as a prudential speed bump. I dissent from the majority opinion's decision to hold the case in abeyance so that we may turn back to it if, at some future time, we get jurisdiction.

The majority posits that jurisdiction may materialize if the plaintiffs, claiming emergency, do not obtain a prompt decision on their not-yet filed petition to the DEA--but this seems to be no all-fired emergency, given that the plaintiffs are afforded half a year to file a petition on which hang supposed "serious, life-or-death" consequences. Majority Op. 3. For the following reasons, the plaintiffs' claims of emergency are tenuous, and constitute a further argument against retaining jurisdiction that we do not have in order to hurry along an administrative decision on a petition that has not been filed.

- Plaintiffs Dean Bortell and Sebastien Cotte sue on behalf of their severely ill children, who rely on marijuana for treatment. Bortell and Cotte concede that their children get all the treatment they need, including marijuana, and dwell in states that do not outlaw it or that do not enforce any vestigial prohibition; their grounds for claiming urgency are that their children are unable to take that medicine with them if they travel onto federal lands or into states where marijuana is illegal. The parents add that they suffer fear they might be subject to federal prosecution because they are involved in their children's medical treatment. I view these claims as contrived and fanciful. Nobody need fear severe consequences for administering medical marijuana to sick children.

- Jose Belen is a veteran with post-traumatic stress disorder who successfully uses marijuana to manage his symptoms, but complains that his travel is restricted and that he cannot take full advantage of his veterans benefits (presumably for the government to pay for the marijuana).

- Plaintiff Marvin Washington asserts that he is impeded from seeking federal aid to expand his business so that he can sell cannabis products. No emergency here, and likely no standing either.

- Finally, the Cannabis Cultural Association assists people of color who wish to participate in the cannabis industry but who cannot because they jumped the gun, and have been arrested or convicted for cannabis use. I cannot see that this Association has standing to challenge the classification of marijuana under the nation's drug laws, let alone to seek an emergency resolution of that issue.

* * *

As to the Judgment below, which dismissed the claims for failure to exhaust administrative remedies, I agree with the District Court--and with the majority opinion, which agrees that exhaustion is required (at least for now).

I part company with the majority opinion insofar as it holds the case in abeyance with the expectation of taking some measures if the DEA fails to act with "adequate dispatch." Majority Op. 27. Our failure to dismiss the case now is error for several reasons that are easily stated.

First, it is common ground that the case was properly dismissed under 12(b)(1) for failure to exhaust remedies; so neither this Court nor the District Court has jurisdiction to grant a remedy. And we cannot simply decide to wait for jurisdiction that (as we are properly ruling) we do not have. Our job as a circuit court is to issue mandates. We do not fulfill the requirements of the job by holding a case in abeyance on the off chance that we may get jurisdiction to decide it in the future.

Second, the terms of the hold on this case are without content: we may take "whatever further action" if the agency fails to act "promptly" or "with adequate dispatch" or "[with] appropriate speed" or "with alacrity". Majority Op. 25-27. This is of no help--the DEA is unlikely to discern what "adequate

2

dispatch" or "appropriate speed" may mean for an issue that (as the majority opinion observes) "stretch[es] back decades".[1]  Majority Op. 2.

*     *     *

Given all this, it would be surprising if solid precedent supported this procedural invention.  The majority opinion adduces none.  The majority thinks that <u>United States v. Kiffer</u>, 477 F.2d 349 (2d Cir. 1973), "makes clear that, when appropriate, we do have the power to act even if the administrative agency has not."  Majority Op. 22.  But in that case, the Court excused administrative exhaustion only because the defendant had shown that exhaustion would be futile and unduly prejudicial.  <u>Id.</u> at 351-352 ("[I]t appears now that the administrative route for [the defendants] would at best provide an uncertain and indefinitely delayed remedy . . . [and impose on them a] severe burden.").  Accordingly, <u>Kiffer</u> stands only for the uncontroversial proposition that exhaustion may be excused where it would be futile or unduly prejudicial; it does not condone waiting around until an exception is met.  The majority opinion (correctly) concludes that the plaintiffs do not meet the requirements for either exception.  The relevance of <u>Kiffer</u> ends there.

The majority opinion relies on <u>Telecommunications Research & Action Center v. F.C.C.</u>, 750 F.2d 70 (D.C. Cir. 1984) ("<u>TRAC v. F.C.C.</u>"); but that Court decided a mandamus petition (none is before us here).  Moreover, the court did not hold the case in abeyance, but retained jurisdiction (that it already had) only to ensure that the agency fulfilled its <u>sua</u> <u>sponte</u> promise to address the issue expeditiously.  And the court gave the agency specific direction.  <u>Id.</u> at 80-81 (directing the agency to advise the Court of its progress every 60 days).

---

[1] The majority opinion also limits its "purview" to a failure of the agency to act with "adequate, if deliberate, speed."  Majority Op. 26.  The echo of that phrase from <u>Brown v. Board of Education II</u> is unfortunate, however, given that, in the many decades since, school integration is an unfinished project.  The phrase seems to be derived from Admiralty law in the days of sail, which likewise offers no useful context.  And in Francis Thompson's "Hound of Heaven," "deliberate speed" is the pace by which God pursues us.  No help there either.

3

The majority opinion's "e.g." cite to a single Ninth Circuit summary order does not bespeak a wealth of examples.  In that case as well, the court considered a mandamus petition.  It decided that a writ of mandamus was not warranted, and *declined* to retain jurisdiction, citing only TRAC v. F.C.C. for the proposition that it *could* have retained jurisdiction if it wanted to.  In re Pesticide Action Network N. Am., 532 F. App'x 649, 652 (9th Cir. 2013).  (The parenthetical quote from Pesticide classifies itself as "well-established"--often a tell that the point is a novation.)  The majority's remaining authority, a concurring opinion by Judge Calabresi, advances the speculative idea that courts may prod government when laws outlive the views of the *bien pensant* community.  None of these cases supports the idea that a court is permitted to hold a case in abeyance because the court may on contingency gain jurisdiction to hear it, and can bully the agency in the meantime.  As near as I can make it out, the holding of the majority opinion is: a court without jurisdiction should proceed with caution.

\* \* \*

I doubt that the DEA will be hurrying its work on an application that these plaintiffs have not yet filed, seeking administrative action on an old and ramified controversy.  Unless the panel opinion precipitates a swift administrative rejection, there is no reason to anticipate a swift ruling that entails the assessment of countervailing risks, the pendency of legislation, and the eliciting of opinions on issues of medicine and public health.  So I fully expect to see further proceedings in this appeal.  No one can tell what this panel could do then, or (more accurately) would do.  In the meantime, the one thing that will not happen is the issuance of the mandate, since I presume the majority will not thus oust this panel and this Court of the ability to take "whatever further action" may be necessary.  Majority Op. 26.  As and when this case returns to this Court and this panel, I will be an interested and bemused spectator.

4